OCTILLO LAW
Myriah V. Jaworski, Esq. Bar No. 336898
mjaworski@octillolaw.com
600 Broadway, Suite 700
San Diego, California 92101
Telephone: 619-492-4379
Chirag H. Patel, Esq. (*Pro Hac Pending*)
cpatel@octillolaw.com
600 Broadway, Suite 700
San Diego, California 92101
Telephone: 619-492-4379

*Attorneys for Defendant*
*Lightspace, Inc.*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| The Estate of Carson Bride by and though his appointed administrator, Kristin Bride, and Tyler Clementi Foundation, on behalf of themselves and all others similarly situated, | **DEFENDANT LIGHTSPACE, INC.'S NOTICE OF MOTION TO DISMISS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| Plaintiff, | |
| v. | Civil No.: 2:21-cv-06680-JVS-MRW |
| YOLO TECHNOLOGIES, INC., LIGHTSPACE, INC., DOES #1-10. | Judge: Hon. Fred W. Slaughter |
| | Trial Date: October 3, 2023 |
| Defendants. | |

## <u>NOTICE OF MOTION AND MOTION TO DISMISS</u>

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on September 29, 2022 in Courtroom 10D, 411 West 4th Street, Santa Ana, CA, 92701-4516, before the Honorable Judge Fred J. Slaughter, Defendant Lightspace Inc. ("Lightspace") will and hereby does move for an order dismissing the Amended Complaint and/or each of its causes of action as against Lightspace pursuant to Rules 12(b)(6) and 12(b)(1) of the Federal Rules of Civil Procedure.

Plaintiffs' claims are barred in their entirety by Section 230 of the Communications Decency Act, 47 U.S.C. § 230(c)(1). That statute precludes claims, like Plaintiffs' claims here, that treat interactive computer service providers, like Lightspace, as the "speaker" or "publisher" of content created by third-party users of its internet-based platform. All equitable claims must be dismissed because Plaintiffs have an adequate legal remedy for past harms and no standing to obtain an injunction for future harms. The Tyler Clementi Foundation lacks Article III standing to pursue its claims. Finally, various claims must be dismissed for failure to state a claim under Rule 12(b)(6), due to Plaintiffs' failure to plead essential elements of each statutory claim and failure to allege a duty of care to support their negligence claim.

This motion is based upon the following memorandum of points and authorities, its previously filed supporting declaration [ECF Nos. 76-1 to 76-8], its previously filed notice and request for judicial notice [ECF No. 77] and proposed order; the complete files and records in this action; the argument of counsel; and such other matters as the Court may consider.

1

## **CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.3**

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on August 5, 2022.

1
2

## **TABLE OF CONTENTS**

I.   Introduction ..................................................................................................1

II.  Background & Relevant Factual Allegations .......................................4

III. Argument......................................................................................................6

A. The CDA bars all of Plaintiffs' Claims against Lightspace .......................6

1.  The CDA immunizes Lightspace against state law claims that stem from content published by its app's users.......................................6

2.  Plaintiffs cannot plead around the CDA's broad immunity ..........10

B. Plaintiffs' Claims are Barred by the First Amendment.............................18

C. Plaintiffs Cannot Assert Equitable Relief Claims ....................................19

D. Plaintiffs' Claims Have Other Pleading Defects .......................................20

1.  The Estate and A.K.'s negligence claim (Count III) fails to allege the existence of a duty of care, breach, and causation. ................20

2.  The Estate and A.K.'s unjust enrichment claim (Count V) is duplicative and fails to allege an unjust retention of a benefit ......21

3.  The Estate and Ms. Bride's Oregon UPTA Claim (Count VI) fails to allege the element of a loss of money or property....................22

4.  The Foundation fails to state a New York GBL Section 349 or 350 claim (Count VII and VIII) ...........................................................22

5.  A.K.'s Colorado CPA Claim (Count IX) fails to plead a misrepresentation or an economic injury.......................................23

6.  The Estate and AK.'s California UCL Claim (Count XII) fails to plead a misrepresentation or economic injury. .............................24

E. The Foundation Lacks Article III Standing ...............................................25

IV. Conclusion...................................................................................................25

# **TABLE OF AUTHORITIES**

## Cases

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ...................................................................25

*Astiana v. Hain Celestial Grp., Inc.*,
  783 F.3d 753 (9th Cir. 2015) ............................................................ 21, 22

*Barnes v. Yahoo!, Inc.*,
  570 F.3d 1096 (9th Cir. 2009) ................................................................7, 9

*Beckman v. Match.com*,
  2013 WL 2355512, at *7 (D. Nev. 2013) ....................................................3, 17

*Beckman v. Match.com, LLC*,
  668 Fed. App'x 759 (9th Cir. 2016) .............................................................3

*Caraccioli v. Facebook, Inc.*,
  167 F. Supp. 3d 1056 (N.D. Cal. 2016)........................................................8

*Carafano v. Metrosplash.com*,
  339 F.3d 1119 (9th Cir. 2003) ................................................................ 6, 9, 11

*Dyroff v. Ultimate Software Grp., Inc.*,
  *cert. denied*, 140 S. Ct. 2761 (2020)..........................................................8

*Cross v. Facebook*,
  14 Cal. App. 5th 190 (2017).................................................................6, 17

*Cumming v. Nipping*,
  285 Or. App. 233 (2017)........................................................................22

*Dent v. Nat'l Football League*,
  902 F.3d 1109 (9th Cir. 2018) .................................................................20

*Doe II v. MySpace Inc.*,
  175 Cal. App. 4th 561 (2009) .................................................................13

*Doe v. Epic Games, Inc.*,
  435 F. Supp. 3d 1024 (N.D. Cal. 2020)........................................................22

*Doe v. Friendfinder Network, Inc.*,
  540 F. Supp. 2d 288 (D.N.H. 2008)...........................................................11

*Doe v. Internet Brands, Inc.*,
  824 F.3d 846 (9th Cir. 2016) ..................................................................15

*Doe v. MySpace, Inc.*,
   528 F.3d 413 (5th Cir. 2008) ................................................................12

*Doe v. Twitter*,
   2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) .................................14

*Dyroff v. Ultimate Software Grp., Inc.*,
   934 F.3d 1093 (9th Cir. 2019) ................................................ passim

*Frank v. DaimlerChrysler Corp.*,
   741 N.Y.S.2d 9 (N.Y. App. Div. 2002) ..............................................23

*Gonzalez v. Google, Inc.*,
   282 F. Supp. 3d 1150 (N.D. Cal. 2017) ..............................................9

*HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc.*,
   805 F. Supp. 2d 1115 (D. Colo. 2011) ..............................................23

*Herrick v. Grindr, LLC*,
   306 F. Supp. 3d 579 (S.D.N.Y. 2018) ....................... 3, 12, 14, 17, 23

*Herrick v. Grindr, LLC*,
   765 Fed. App'x 586 (2d Cir. 2019) ...........................................3, 12

*Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos.*,
   515 U.S. 557 (1995) ..............................................................................18

*In re Facebook, Inc.*,
   2021 WL 2603687, at *9–11 (Tex. June 25, 2021) .................. 12, 14

*In re iPhone Application Litig.*,
   2011 WL 4403963, at *9 ....................................................................21

*Jane Doe No. 1 v. Backpage.com, LLC*,
   817 F.3d 12, 21 (1st Cir. 2016) ........................................ 3, 11, 12, 17

*Kane v. Chobani, Inc.*,
   2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) ........................24

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ..........................................................25

*Kimzey v. Yelp! Inc.*,
   836 F.3d 1263 (9th Cir. 2016) ......................................................7, 8

*Koch v. Koch Industries, Inc.*,
   203 F.3d 1202 (10th Cir.2000) ..........................................................24

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003) ......................................................................24

*Lemmon v. Snap, Inc.*,
  995 F.3d 1085 (9th Circ. 2021)............................................................. 7, 13, 14

*Miami Herald Publ'n Co. v. Tornillo*,
  418 U.S. 241 (1974)...........................................................................18

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
  591 F.3d 250 (4th Cir. 2009) ...............................................................6

*NetChoice, LLC v. Att'y Gen. of Fla.*,
  34 F.4th 1196 (11th Cir. 2022) ...........................................................18

*NetChoice, LLC v. Paxton*,
  2021 WL 5755120, at *8 (W.D. Tex. Dec. 1, 2021) .................................. 18, 19

*O'Handley v. Padilla*,
  2022 WL 93625, at *14 (N.D. Cal. Jan. 10, 2022)...........................................18

*Opperman v. Path, Inc.*,
  87 F. Supp. 3d 1018, 1045 n.12 (N.D. Cal. 2014)....................................17

*Pirozzi v. Apple, Inc.*,
  913 F.Supp.2d at 840 ........................................................................22

*Sharpe v. Puritan's Pride, Inc.*,
  466 F. Supp. 3d 1066 (N.D. Cal. 2020)................................................24

*Shroyer v. New Cingular Wireless Servs., Inc.*,
  622 F.3d 1035 (9th Cir. 2010) ............................................................24

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
  144 F. Supp. 3d 1088 (N.D. Cal. 2015).................................................8

*Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*,
  697 F. App'x 526 (9th Cir. 2017) ........................................................8

*Sonner v. Premier Nutrition Corporation*,
  971 F.3d 834 (9th Cir. 2020) ..............................................................19

*Stearns v. Select Comfort Retail Corp.*,
  2009 WL 4723366, at *12 (N.D. Cal. Dec. 4, 2009)......................................24

*Stitt v. Citibank, N.A.*,
  748 F. App'x 99 (9th Cir. 2018) ..........................................................21

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021)........................................................................19

*Turner Broadcasting Sys., Inc., v. FCC*,
  512 U.S. 622 (1994)...........................................................................18

*Zeran v. Am. Online, Inc.*,
  129 F.3d 327 (4th Cir. 1997) ............................................................... 6

**Statutes**
Cal. Bus. & Prof. Code § 17203 ........................................................... 24
GBL § 349 claim ................................................................................... 23
New York GBL Sections 349 and 350 .................................................. 22
ORS § 646.638(1), (8) .......................................................................... 22

**Other Authorities**
47 U.S.C. § 230(c)(1) ........................................................................... 11
47 U.S.C. § 230(e)(3) ...................................................................... 10,19
47 U.S.C. § 230(f)(2) ....................................................................... 10, 11
47 U.S.C. § 230(f)(3) ............................................................................ 11

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  Introduction

On May 10, 2021, the original three Plaintiffs - the Estate of Carson Bride, through its administrator Kristin Bride ("the Estate"), Carson's mother individually ("Ms. Bride"); and the Tyler Clementi Foundation ("Foundation") (collectively, the "Original Plaintiffs") - filed their original complaint [ECF No. 1].  On September 8, 2021, Defendants Snap, Inc. ("Snap"), Lightspace, Inc. ("Lightspace") and Yolo Technologies, Inc. ("Yolo") moved to dismiss the original complaint.[1]  After *ten* extensions and over a year later (on June 27, 2022), Plaintiffs filed an amended complaint[2] in lieu of briefing Defendants' motions to dismiss [ECF No. 113].[3]  The amended complaint fails for all of the reasons the original complaint failed.

Snapchat is a popular mobile application, developed by former-defendant Snap, that allows its users to exchange video, photo, and text-based messages. Snapchat also allows third-party developers to build applications that integrate into Snapchat through an interface called "Snapkit."  Defendant Lightspace formerly offered an application ("app") called "LMK" that allowed Snapchat's users to conduct anonymous question and answer polls.  The Plaintiffs (except for the Foundation) are representatives of individuals (Carson and A.K.) who

---

[1] Snap and Yolo filed their own motions to dismiss. [ECF Nos. 71-74]. Lightspace moved to dismiss and to join Snap's motion. [ECF Nos. 76-77]. Plaintiffs dismissed Snap as a defendant on June 17, 2022. [ECF No. 111].

[2]  The Amended Complaint [ECF No. 113] is referred to as the "Complaint" and cited at "Am. Compl." The original complaint [ECF No. 1] is cited as "Compl."

[3] The amended complaint adds three new plaintiffs – A.K., A.C., A.O. (collectively the "New Plaintiffs") and three state law claims correlating to each new plaintiff.  Only A.K. asserts a claim against Lightspace.

allege that they were injured by content published by other third-party users on LMK.[4]

Plaintiffs allege that third-party users on LMK sent harassing anonymous messages to Carson that led to his tragic suicide in June 2020.  Similarly, Plaintiff A.K. alleges that third-party users on the LMK app sent her messages that caused her emotional and psychological harm.  Plaintiffs' assert various state law claims against Lightspace based on these alleged injuries.

Federal law, however, bars every one of Plaintiffs' claims.  Congress recognized that internet platforms would cease to operate if they were required to monitor – and were subject to liability for – the enormous volume of user-generated content on their platforms.  Thus, Congress enacted the Communication Decency Act ("CDA") to immunize internet-based platforms from liability for harm caused by the users of those platforms.  The CDA is directly applicable here because each of the Plaintiffs' claims seek to hold Lightspace responsible for user-generated content that allegedly harmed Carson and A.K.

Plaintiffs attempt to sidestep the CDA by claiming that this case is about Lightspace's product design and policies, not its users' content.  In sum, Plaintiffs claim that Lightspace's app was defectively designed (Counts I-III, V, VI-IX, XII) and that Lightspace misrepresented its content moderation policies in violation of Oregon, New York, Colorado, and California consumer protection statutes (Counts VI-IX, XII).

Plaintiffs are not the first to attempt to circumvent the CDA's broad immunity under the guise of product liability, tort, or consumer protection

---

[4] Plaintiffs A.C. and A.O. allege that each "downloaded . . . the . . . Lightspace" app, but neither allege use of the app nor assert claims against Lightspace. Compl. ¶¶ 22, 23.

theories.  Courts, however, have repeatedly rejected litigants' attempts to avoid the CDA by dressing a claim that is centrally based on user-generated content into one about product design or misrepresentation.  Indeed, if allowed, these disguised claims would nullify the CDA in every case involving a claim against an internet-based application that hosts user-generated content.

When applying the CDA, courts look at whether the claimants are challenging "features that are part and parcel of the overall design and operation" of the platform at issue rather than a harm that actually stems from the platform's users' content.  *Jane Doe No. 1 v. Backpage.com, LLC*, 817 F.3d 12, 21 (1st Cir. 2016).  Under that rubric, courts have held that the CDA bars claims based on: (i) a platform's anonymization features, *id*.; (ii) failures to warn about content on the platform, *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 592 (S.D.N.Y. 2018), *aff'd*, 765 Fed. App'x 586 (2d Cir. 2019); and (iii) alleged misrepresentations about content moderation or features, *Beckman v. Match.com*, 2013 WL 2355512, at *7 (D. Nev. 2013), *aff'd in part, rev'd in part sub nom. Beckman v. Match.com, LLC*, 668 Fed. App'x 759 (9th Cir. 2016).  These are the exact same claims advanced by Plaintiffs here and all of them are barred by the CDA.

Although the CDA bars all of the Plaintiffs' claims, the claims are defective for several other reasons:

***First***, Plaintiffs' claims are barred by the First Amendment because decisions about content moderation (*i.e.,* editorial control and judgment) is protected speech.

***Second***, Plaintiffs cannot state claims for equitable relief because they have an adequate remedy at law for *past harms* and lack Article III standing to seek equitable relief for *future harms*.

***Third***, Plaintiffs cannot state a claim for negligence because Lightspace does not owe Plaintiffs a duty of care as a matter of law.  Plaintiffs also fail to allege breach and causation.

***Fourth***, Plaintiffs' various state law consumer protection and unjust enrichment claims contain various pleading defects.  Namely, the statutory consumer protection claims fail to allege misrepresentation with specificity under FRCP 9(b)'s heightened pleading standard and fail to allege an economic loss.  Plaintiffs' unjust enrichment claims are duplicative of their other state law claims and fail to allege an unjust retention of a benefit.

***Fifth***, Plaintiff Foundation lacks Article III standing.

For all of these reasons, this Court should dismiss Plaintiffs' Amended Complaint with prejudice.

## II.   Background & Relevant Factual Allegations

Snap is the developer of a popular mobile multimedia app that allows users to exchange pictures and messages.  Compl. ¶ 49.  Snapchat also allows third-party developers to create apps that integrate with Snapchat to add additional features through its "SnapKit" interface.  Compl. ¶ 49.  These third-party apps are "reviewed, vetted, and integrated for use" by Snap.  *Id.*  Lightspace formerly operated an app through SnapKit called LMK.  Compl. ¶ 50.  LMK is an "anonymous Question and Answer and polling app" that allows *users* to "create and customize stickers and backgrounds while sharing polls with their friends on Snapchat."  Am. Compl. ¶ 73.

Carson allegedly used LMK between January 23, 2020, and June 22, 2020.[5]  Am Compl. ¶ 101.  However, Plaintiffs direct their claims at only seven

---

[5] Carson was using co-Defendant YOLO's app at the same time with far more frequency. *See* Am. Compl.

4

messages that Carson allegedly received from other LMK users between June 21 and June 22, 2020.[6]   Am. Compl. ¶ 102. These messages from other users stated: "Ayo where is the horse cock bb"; "Yes daddy harder daddy"; "hi babygirl do you wanna have a threesome sometime?"; "My WiFi sucks so I just flick the bean to ur Bitmoji"; "Do them every week pls daddy I got a hard on for your reply's just let my gf watch u and flick her bean." *Id*.  Carson died of suicide on June 23, 2020.  Am. Compl. ¶ 100.  Prior to his suicide, Carson searched for a method to reveal the identities of message senders on the YOLO app, but did not make a similar effort related to LMK's app.  *See id*.

Plaintiff A.K. allegedly used LMK throughout 2020.  Am. Compl. ¶ 128. During that time, A.K. allegedly received harassing messages that caused her to have suicidal ideations and low self-esteem.  Am. Compl. ¶¶ 129-131.

LMK had guidelines for its users.  Plaintiffs focus on the following portions of the guidelines:

> LMK does "not tolerate any sexually explicit content."
>
> "*Reports* of stalking, threats, bullying, or intimidation, are taken very seriously and may be reported to law enforcement."
>
> LMK would "go to great lengths to protect our community from 'inappropriate users' by implementing various technology and moderation practices including:  Artificial intelligence technology to identify potentially inappropriate content within text . . . human moderation to assess whether content or user violates our Community Guidelines."

---

[6] In comparison, Carson allegedly received 105 messages on Co-Defendant YOLO's app, with 57 of them between June 7 and June 20, 2020. Am. Comp. ¶ 90. Moreover, the messages Carson received on Yolo were more explicit in content than those users exchanged with Carson on LMK. See Am. Compl. ¶¶ 91-94.

Am. Compl. ¶ 81.

No Plaintiff (including Carson) alleges that they reported any of the messages Carson or A.K. received from other users to LMK's customer support, or otherwise contacted LMK's customer support. *See generally* Am. Compl.

## III.   Argument

### A. <u>The CDA bars all of Plaintiffs' Claims against Lightspace</u>

#### 1. The CDA immunizes Lightspace against state law claims that stem from content published by its app's users

The CDA's purpose is "to promote the free exchange of information and ideas over the Internet." *Carafano v. Metrosplash.com*, 339 F.3d 1119, 1122 (9th Cir. 2003). In enacting the CDA, "Congress considered the weight of the speech interests implicated," including the "obvious chilling effect" that the "the specter of tort liability" would impose on internet platforms providers considering the "staggering" amount of online speech hosted on their platforms. *Id*. at 1224. Based on that concern, Congress "chose to immunize service providers to avoid any such restrictive effect." *Id. See also Zeran v. Am. Online, Inc*., 129 F.3d 327, 330–31 (4th Cir. 1997) (CDA reduces disincentives for a platform to remove such speech and to provide immunity to the platform's operators).

"[C]ourts have treated § 230(c) immunity as quite robust" to further its underlying policies. *Carafano*, 339 F.3d at 1223. Thus, CDA immunity is "generally accorded effect at the first logical point in the litigation process" because CDA "immunity is an ***immunity from suit*** rather than a mere defense to liability." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 254 (4th Cir. 2009) (emphasis added). To that end, Courts regularly apply CDA immunity at the pleadings stage. *See e.g.*, *Cross v. Facebook*, 14 Cal. App. 5th 190, 206 (2017).

The CDA immunizes a defendant from suit if:  (1) the defendant is a "provider . . . of an interactive computer service;" (2) the allegedly offending content was "provided by another information content provider;" and (3) the claims seek to treat the defendant as the "publisher" of that content.  47 U.S.C. § 230(c)(1); *see also Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1100–01 (9th Cir. 2009).  "No cause of action may be brought and no liability may be imposed under any State . . . law that is inconsistent [with the CDA]."  47 U.S.C. § 230(e)(3).  Plaintiffs' claims against Lightspace meet each of the elements of CDA immunity.

> i.   <u>Lightspace's Messaging App is an "Interactive Computer Service"</u>

The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server."  47 U.S.C. § 230(f)(2).  "The prototypical service qualifying for [CDA] immunity is an online messaging board (or bulletin board) on which Internet subscribers post comments and respond to comments posted by others."  *Kimzey v. Yelp! Inc.*, 836 F.3d 1263, 1266 (9th Cir. 2016).

The Ninth Circuit has already held that the Snapchat application is "interactive computer service" under the CDA.  *Lemmon v. Snap, Inc.*, 995 F.3d 1085, 1091 (9th Cir. 2021).  Specifically, the *Lemmon* Court found that Snapchat satisfies the "expansive definition" of an interactive computer service because Snapchat "permits its users to share photos and videos through Snap's servers and the internet."  *Id.* (internal quotation omitted).  Thus, the app "necessarily 'enables computer access by multiple users to a computer server.'" *Id.* (quoting 47 U.S.C. § 230(f)(2)).

Lightspace's LMK messaging app is an "interactive computer service" for the same reasons as Snapchat under the CDA's "expansive definition."  As Plaintiffs acknowledge, LMK is an "anonymous Question and Answer and polling app that integrates with Snapchat" and allows its "*users* [to] create and customize stickers and backgrounds while sharing polls with their friends on Snapchat."  Am. Compl. ¶ 28 (emphasis added).  The app also allows "*users* [to] vote anonymously and the *user* who posted the poll [to] share results on Snapchat."  *Id*. (emphasis added).  Like Snapchat, Lightspace's app allows its users to share media which "necessarily 'enables computer access by multiple users to a computer server.'"  *Id*. (quoting 47 U.S.C. § 230(f)(2)).  Plaintiffs' own allegations establish that all the content on LMK is generated by and shared among the app's users through a messaging platform, similar to Snapchat (*Lemmon*); a message board, *Kimzey,* 836 F.3d at 1266*;* or a post on Facebook, *Caraccioli v. Facebook, Inc.*, 167 F. Supp. 3d 1056, 1065 (N.D. Cal. 2016).  This Court should find that Lightspace meets the first element for CDA immunity because LMK is an interactive computer service.

## ii.   *Lightspace's users are "information content providers"*

The second element of CDA immunity requires that the allegedly offending content was "provided by another information content provider." § 230(c)(1).  An "information content provider" is "any person or entity that is responsible, in whole or in part, for the creation or development" of the content at issue.  § 230(f)(3).  Courts regularly hold that online platform users satisfy this definition when they post or share content.  *See e.g.*, *Dyroff v. Ultimate Software Grp., Inc.*, 934 F.3d 1093, 1097–98 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020); *Sikhs for Justice "SFJ," Inc. v. Facebook, Inc.*, 144 F. Supp. 3d 1088, 1094 (N.D. Cal. 2015), *aff'd*, 697 F. App'x 526 (9th Cir. 2017).

As explained above, Plaintiffs' allegations concede that LMK's app users exclusively generated the polls and messages on LMK.  Moreover, Plaintiffs admit that the allegedly offending content that Carson and A.K. received originated from other users of the app.  Am. Compl. ¶¶ 102-103; 131.  Plaintiffs do not allege that Lightspace played any role in the creation of those message(s).  Accordingly, this Court should find that Lightspace meets the second element for CDA immunity because third party users provided the allegedly offending content, not Lightspace.

> iii.   *Plaintiffs' claims seek to treat Lightspace as the publisher of its users' content*

The final requirement for CDA immunity considers whether Plaintiffs' claims seek to treat Lightspace as the publisher of its users' content.  "[W]hat matters is not the name of the cause of action . . . [but] *whether the cause of action inherently requires the court to treat the defendant as the 'publisher or speaker' of content* provided by another."  *Barnes*, 570 F.3d at 1101–02 (emphasis added).  That is exactly what Plaintiffs seek to do here.  Plaintiffs allege that messages from third-party app users were the impetus for Carson's suicide and A.K.'s emotional and psychological harm.  Am. Compl. ¶¶ 1 (Carson "took his own life due to anonymous online bullying"); 102-03 (describing messages from other users to Carson); 131 (alleging messages that A.K. received from other users caused harm).  Courts have broadly held that claims stemming from *users'* exchange of messages or content on an online platform meet the third element for CDA immunity.  *See e.g., Dyroff*, 934 F.3d at 1097–98 (satisfied where claims against website were based on messages exchanged over website); *Carafano*, 339 F.3d at 1122, 1124 (satisfied where claims against dating website were based on an anonymous user creating a fake dating profile that impersonated the plaintiff); *Gonzalez v. Google, Inc*., 282 F. Supp. 3d 1150, 1165

(N.D. Cal. 2017) (satisfied where claims were based on terrorists posting content on YouTube).  As explained further below, Lightspace meets the third element for CDA immunity because each of the Plaintiffs' claims seek to treat Lightspace as the publisher of its users' messages to Carson and A.K.

### 2. Plaintiffs cannot plead around the CDA's broad immunity

Plaintiffs attempt to avoid the CDA's broad immunity by framing their claims as being about Lightspace's alleged defective app design, failure to warn, and misrepresentations about its enforcement of community guidelines.  Am Compl. ¶¶ 17; 80-82.  Plaintiffs miss the point.  CDA immunity applies when the Plaintiffs' injuries stem from content created and posted by third parties, regardless of the legal theory advanced.  Here, Carson and A.K.'s alleged injuries would not have resulted but for the messages each received from other LMK users.  If the messages were innocuous or supportive, there would be no harm.  Indeed, under Plaintiffs' theory, *every* case involving an individual asserting an injury stemming from third-party content on an internet platform would give rise to a claim that the app is defectively designed or that the app misrepresented its content moderation guidelines by allowing users to exchange that harmful content.  But such claims would entirely undercut the CDA's purpose and its broad immunity.  Thus, courts have repeatedly held that the CDA bars the exact claims that Plaintiffs assert in their Amended Complaint.

> i.   *Plaintiffs' Design Defect Claim (Count I) is barred by the CDA*

Plaintiffs first attempt to avoid the CDA by arguing that their claims are about the "defective design" of Lightspace's app rather than the "content provided by third-parties."  Am Compl. ¶¶ 178-195 (Count I); 215 (Count III).  However, courts have repeatedly rejected attempts to avoid CDA immunity under

the guise of defective design claims, including claims that <u>anonymity features</u>, the <u>inability to moderate user content</u>, or a <u>failure to protect users</u> constitute design defects.  These theories uniformly fail under the CDA because in each instance the plaintiffs would not have been "harm[e]d . . . but for the content of the [third-party] postings."  *Backpage.com*, 817 F.3d at 20.

   ***User Anonymity***.  Courts have repeatedly held that the CDA bars claims alleging that anonymity features is a design defect.  *Dyroff*, 934 F.3d at 1095 (anonymous message board); *Backpage.com*, 817 F.3d at 21 ("e-mail anonymization); *Carafano,* 339 F.3d at 1121, 1125 (anonymous content); *Doe v. Friendfinder Network, Inc*., 540 F. Supp. 2d 288 (D.N.H. 2008) (same).  The Ninth Circuit's decision in *Dyroff*, 934 F.3d at 1095 illustrates the point.  In *Dyroff*, a mother sued an online anonymous message board that her son used to purchase lethal narcotics.  *Id*.  The mother asserted a failure to warn claim against the website and argued that the CDA did not apply because her claim was challenging website's anonymous posting and recommendation "features and functions."  *Id.* at 1098.

   The *Dyroff* court saw through the mother's attempt to "plead around Section 230 immunity by framing these website features as [the website's own] content." *Id*.  Rather, Section 230 immunity barred the product defect claims because they "inherently require[d] the court to treat the defendant as the 'publisher or speaker'" of the messages at issue.  *Id*.  In other words, a plaintiff cannot circumvent CDA immunity by focusing on a website's provision of "neutral tools that a user exploits" to create harmful content, rather than on the content itself.  *Id*. at 1099.  Here, Plaintiffs are arguing that LMK was defectively designed because it offered a neutral tool (anonymous messaging) that was

abused by some of its users.  Plaintiffs' defective design claim is barred by the CDA.

***Content Moderation***.  Plaintiffs also cannot avoid CDA immunity by arguing that a failure to moderate the platform's user-generated content is a design defect (and similarly that an alleged failure to enforce content moderation policies is a misrepresentation).  The First Circuit's *Backpage.com*, 817 F.3d at 16, decision is on point.  In that case, a website user claimed that ads posted by other users on the defendant's website led her to become a sex-trafficking victim.  *Id*.  In an attempt to avoid CDA immunity, the user argued that her claims did not stem from the content of the ads but rather choices that the website made about its design, particularly "rules about which terms are permitted or not permitted . . ., the lack of controls on the display of phone numbers, [and] the option to anonymize e-mail addresses."  *Id*. at 20.  The First Circuit rejected the user's argument, explaining that CDA immunity applied because "there would be no harm to [the user] but for the content of the postings," and that CDA immunity existed "precisely [for] . . . website policies and practices" concerning "what content can appear on the website and in what form."  *Id*. at 20-21.

***User Abuse of App Features***.  The same is true of claims that seek to avoid CDA immunity by arguing that a failure to prevent users from abusing an app's features is a design defect.  For example, in *Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 586-88 (S.D.N.Y. 2018), *aff'd*, 765 Fed. App'x 586 (2d Cir. 2019), an app user argued that a dating app contained features that could be exploited by users to harass others on the app.  *Id*.  The district court held that CDA immunity barred the claim based on the misuse of "tools and functionality that are available equally to bad actors and [to] the app's intended users."  *Id*. at 589.  *See also In re Facebook, Inc*., 2021 WL 2603687, at *9–11 (Tex. June 25, 2021) (CDA

barred products liability claim premised on the platform's safety measures); *Doe v. MySpace, Inc.*, 528 F.3d 413, 419–20 (5th Cir. 2008) (CDA barred claim based on failure to implement measures to prevent predators from communicating with minors; *Doe II v. MySpace Inc.*, 175 Cal. App. 4th 561, 573 (2009) (similar).

These cases collectively demonstrate that Lightspace is entitled to CDA immunity for Plaintiffs' product defect claim regardless of how framed by Plaintiffs. Like in *Dyroff,* the CDA bars Plaintiffs' theory is that "anonymity . . . in a messaging app [poses] a serious danger of emotional and physical harm," Am. Compl. 185. Like *Herrick* and *Backpage.com*, the CDA bars Plaintiffs' theory that Lightspace could have designed its app differently to prevent bullying or harassing content from its users. As explained in *Backpage.com* and *Herrick*, the CDA precludes claims that challenge an app's policies, practices, tools, or functionality *for harm caused by user-generated content*.

Finally, the Ninth Circuit's decision in *Lemmon v. Snap,* 995 F.3d 1085 (9th Cir. 2021), warrants discussion. In *Lemmon*, parents alleged that a phone app that "encouraged their sons to drive at dangerous speeds" and caused their deaths was negligently designed. *Id*. at 1087. The claim was based on two separate features in the app: (a) a "speed filter" that recorded the users' rate of travel and (b) "an incentive system within Snapchat that encouraged its users to pursue *unknown* achievements and rewards." *Id*. at 1091–92. The parents claimed that the combination of these two app features led users to believe that capturing a photo or video while traveling at high speeds would unlock the *unknown* achievements within Snapchat. *Id*.

The Ninth Circuit held that the CDA did not apply because the claim did not "depend[] on a third party's content." *Id*. at 1094. Rather, the "danger" was the two design features in the app: the speed filter *combined with the incentive*

*system*, which encouraged users to drive at unsafe speeds. *Id.* Indeed, the *Lemmon* court expressly acknowledged that the CDA would bar all claims based on *user-generated content* that used the speed filter. *Id*. at 1093 n. 4. However, the CDA did not apply to the parents' claim because the videos or photos that utilized the "speed filter" (*i.e.,* user content) was not the root of the harm. *Id*.

*Lemmon* is distinguishable because Plaintiffs' alleged harm stems directly from users' content – the inflammatory messages themselves posed "[t]he danger" and Plaintiffs allege that Carson and A.K. were "harmed by the post[s]." *Id*. at 1093. *See also Doe v. Twitter*, 2021 WL 3675207 (N.D. Cal. Aug. 19, 2021) ("nature of [Twitter's] alleged design flaw" (not effectively preventing dissemination of child pornography) "and the harm that is alleged to flow from that flaw—is directly related to the posting of third-party content . . ."). For these reasons, Plaintiffs cannot disguise a user-content based claim as a *Lemmon* design defect claim by arguing that anonymity (*Dyroff*) or failure to moderate content (*Backpage.com*) is a design defect. Accordingly, this Court should find that the CDA bars Count I of Plaintiffs' Amended Complaint.

ii.   <u>Plaintiffs' Failure to Warn Claim (Count II) is barred by the CDA</u>

Plaintiffs' second attempt to circumvent the CDA posits that Lightspace "should have known," but "failed to warn users about the dangers of anonymous messaging." Am. Compl. ¶ 201. Like the design defect claim, Plaintiffs' failure to warn claim also fails because it "depend[s] on a close connection between the proposed warning and user-generated content." *Herrick*, 306 F. Supp. 3d at 592. Several courts have held that the CDA bars failure-to-warn claims that center on the theory that the app failed to warn users about the *dangers of third-party content*. *Id*. at 588, 592 (CDA barred claim that dating app failed to warn that certain features on the app could be used as a tool for harassment by other users);

*In re Facebook, Inc.*, 2021 WL 2603687, at *10 (CDA barred claim that platform failed to warn users of the risk they could be targeted by sex traffickers because "[t]he warnings Plaintiffs seek would ***only be necessary because of Facebook's allegedly inadequate policing of third-party content*** transmitted via its platforms" (emphasis added)).

The Ninth Circuit addressed a different situation in *Doe v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016).  In *Doe*, an aspiring model posted a profile about herself on a modeling website.  *Id.* at 848.  Two men used the information to lure the model to a fake audition and then raped her.  *Id.*  The model asserted a failure to warn claim again the website.  *Id.*  The Ninth Circuit held that the CDA did not bar the claim because the model's claim was based on the fact that the website had obtained *actual knowledge* from a source *outside of the platform* that two men were using the platform to sexually assault women.  *Id.* at 848-49, 853.  Thus, the model's claim had "nothing to do with Internet Brands' efforts, or lack thereof, *to edit, monitor, or remove user generated content*."  *Id.* at 852 (emphasis added).  Indeed, no messages or content on the platform were at issue.  *Id.*

Unlike *Internet Brands* (and like *Herrick* and *In re Facebook*), Plaintiffs' claims are based entirely on a failure to warn against user-generated content.  Accordingly, this Court should find that the CDA bars Plaintiffs' "failure to warn" claim.

> ### iii.   Plaintiffs' Negligence Claim (Count III) is barred by the CDA

Plaintiffs' Count III alleges that Lightspace was negligent in developing a defective product and for failing for warn its users of those defects.  *See* Am. Compl. ¶ 215.  Because the negligence claim relies on the same theory as Plaintiffs' design defect (Count I) and failure to warn (Count II) claim,

Lightspace's arguments in § III(2)(i) and (ii), above, are equally applicable to Plaintiffs' negligence claim.  Accordingly, this Court should find that Count III is barred by the CDA.

> iv.   _Plaintiffs' Misrepresentation Claims (Counts VI, VII, VIII, IX, XII) are barred by the CDA[7]_

Plaintiffs next attempt to avoid the CDA under a variety of consumer protection statutes.  These claims fall into three broad theories:  (1) Lightspace made misrepresentations about its product, (2) Lightspace failed to warn about the dangers of its product (_i.e,._ a failure to warn), and (3) Lightspace failed to prevent users from using its platform for bullying and harassment (_i.e.,_ defective design).  Am Compl. ¶¶ 258 (Oregon); 272, 290-91 (New York); 295-96 (Colorado); 316-17, 319 (California).  Plaintiffs' second (failure to warn) and third theories (defective design) are entitled to CDA immunity for the same reasons as Counts I and II.  _See_ § III(2)(i)-(ii), _supra_; 47 U.S.C § 230(e)(3) ("no liability may be imposed under _any State . . . law_ (emphasis added)).

The CDA also bars Plaintiffs' misrepresentation theories.  Plaintiffs allege that Lightspace made false statements:  (i) "about the specific steps they would take to improve the safety of their anonymous messaging apps" Am. Compl. ¶¶ 260, 272, 317, (ii) that it "would 'not tolerate any sexually explicit content[']" _Id._ ¶¶ 260, 274, 319, and (iii) that "[r]eports of stalking, threats, bullying, or intimidation, are taken very seriously and may be reported to law enforcement." _Id._ ¶¶ 260, 274, 319.

---

[7] Plaintiffs direct their common law misrepresentation claims (both labeled Count IV) only at co-Defendant Yolo. However, Plaintiffs assert statutory misrepresentation claims against Lightspace under the consumer protection statutes of Oregon (Count VII), New York (Counts VII and VIII), Colorado (Count IX), and California (Count XII).

Each of the alleged misrepresentations, even if true, relate to how Lightspace would regulate user-generated content on its platform.  Thus, the harm to Plaintiffs from Lightspace allegedly failing enforce its content moderation policies ultimately stems from the allegedly harmful user-generated content on the platform (*i.e.,* but-for the third-party content, Plaintiffs would not be harmed).  Moreover, as explained above, decisions about how a platform moderates content on its platform is entitled to CDA immunity.  *Backpage.com*, 817 F.3d 12; *Herrick*, 306 F. Supp. 3d 579.

Courts have repeatedly held that the CDA bars misrepresentation claims that target a platform's statements or policies about its user-content moderation.  In *Beckman*, 2013 WL 2355512 at *6, a dating platform user who was attacked by another user claimed that the platform negligently misrepresented the "safety of its website."  The district court held that the CDA barred the claims because they were "actually directed at [the platform's] publishing, editorial, and/or screening functions."  *Id*.  In affirming, the Ninth Circuit explained that the CDA barred the misrepresentation claim because it was based on the platform's "role as a publisher of third-party information."  668 Fed. App'x 759, 759 (9th Cir. 2016).  Other courts similarly concluded that the CDA bars misrepresentation claims related to a platform's enforcement of its content moderation policies.  *See Opperman v. Path, Inc*., 87 F. Supp. 3d 1018, 1045 n.12 (N.D. Cal. 2014) (claims seeking to hold Apple liable for "provid[ing] third-party developers with review guidelines," for Apple's "enforcement of its guidelines," or for Apple's "fail[ure] to remove offending apps" from Apple's App Store were claims that targeted "fundamental publisher activity protected by the CDA"); *Cross v. Facebook, Inc*., 14 Cal. App. 5th 190, 206–07 (2017) (CDA barred misrepresentation claims

based on failure to remove third-party content).  Accordingly, this Court should find that the CDA bars Plaintiffs' misrepresentation claims.

> v.  *Plaintiffs' Unjust Enrichment Claim (Count V) is barred by the CDA*

Plaintiffs' "unjust enrichment" claim is entirely duplicative of the claims discussed above.  *See* Am. Compl. ¶ 251 (alleging that Lightspace was unjustly enriched by its "dangerous and defectively designed products and services, misrepresentations, and deceptive trade practices").  Accordingly, the CDA bars Plaintiffs' unjust enrichment claim for the same reasons it bars each of the claims discussed above.

## B. **Plaintiffs' Claims are Barred by the First Amendment**

Plaintiffs' claims are barred by the First Amendment to the extent that they are based on Lightspace's decisions about how to moderate content on the LMK app.  Decisions about "what content to include, exclude, moderate, filter, label, restrict, or promote" are "protected by the First Amendment."  *O'Handley v. Padilla*, 2022 WL 93625, at *14 (N.D. Cal. Jan. 10, 2022).  A messaging platform's content moderation policies are "closely analogous to the editorial judgments" made by other entities that host third-party speech, such as "parade organizers and cable operators."  *NetChoice, LLC v. Att'y Gen. of Fla*., 34 F.4th 1196, 1213 (11th Cir. 2022) (citing *Miami Herald Publ'n Co. v. Tornillo,* 418 U.S. 241, 258 (1974)*; Turner Broadcasting Sys., Inc., v. FCC*, 512 U.S. 622 (1994); *Hurley v. Irish-Am. Gay, Lesbian & Bisexual Grp. of Bos*., 515 U.S. 557 (1995)).  "[T]hat algorithms do some of the work that a newspaper publisher previously did" to make editorial decisions does not change the analysis.  *NetChoice, LLC v. Paxton*, 2021 WL 5755120, at *8 (W.D. Tex. Dec. 1, 2021).

Plaintiffs assert failure to warn, design defect, and misrepresentation claims based on Lightspace allegedly failing to enforce content moderation

policies.  Even if true, these claims are barred because decisions about content moderation (whether through conscious intervention or an automated process) are entitled to First Amendment protection.  *See id*.  Accordingly, Plaintiffs claims are barred by the First Amendment to the extent they are based on Lightspace's alleged failure to moderate user-generated content on its app.

### C. **Plaintiffs Cannot Assert Equitable Relief Claims**

Plaintiffs seek equitable relief in various claims and in their ultimate prayer for relief.  Am. Compl. ¶¶ 264 (Count VI); 284 (Count VII); 292 (Count VIII); 299 (Count IX); 322 (Count XII); Pray for Relief ¶ G; K (p. 87)).  Plaintiffs' requests for equitable relief require dismissal for two reasons.

***First,*** Plaintiffs' equitable relief claims based on *prior* harms are barred by *Sonner v. Premier Nutrition Corporation*, 971 F.3d 834, 838 (9th Cir. 2020), because Plaintiffs have an adequate remedy at law.  Plaintiffs do not allege they lack an adequate remedy at law, and to the contrary, Plaintiffs' Prayer for Relief seeks various forms of legal relief.

***Second***, Plaintiffs lack Article III standing to seek injunctive relief for alleged *future* harm.  In *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021), the Supreme Court explained that "plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)."  To have standing to seek injunctive relief, Plaintiffs must demonstrate that any risk of future harm is "sufficiently imminent and substantial."  *Id.* at 2210.  Here, A.K. is the only Plaintiff who alleges any potential future use of Lightspace's app.  All other Plaintiffs lack standing because they are not the actual or targeted users of the app.  In any event, Plaintiffs also admit that "on March 17, 2022, Snap announced that it would ban anonymous messaging apps like [Lightspace's App] from its

platform." Am. Compl. ¶ 12. With anonymous messaging apps banned on Snapchat, Plaintiffs have no "sufficiently imminent and substantial" risk of future harm.

### D. **Plaintiffs' Claims Have Other Pleading Defects**

The Estate, Ms. Bride, and A.K.'s claims against Lightspace are defective for several other reasons:

> **1. The Estate and A.K.'s negligence claim (Count III) fails to allege the existence of a duty of care, breach, and causation**

To plead a negligence claim, Plaintiffs must plead facts showing the existence of a duty of care, a breach of that duty, proximate causation, and injury. *Dent v. Nat'l Football League*, 902 F.3d 1109, 1122 (9th Cir. 2018).

Plaintiffs' Complaint fails to establish that Lightspace owed a duty of care to Carson and A.K. Plaintiffs allege that Lightspace had a duty to "protect users from an unreasonable risk of harm arising out of the use" of its app. Am. Compl. ¶¶ 211-12. Plaintiffs attempt to paint the issue as one of product design, but their allegations reveal that the alleged "harm arising out of the use" of the app stems entirely from the conduct of other app users. *See id.* at ¶¶ 208-215. Courts in the Ninth Circuit have repeatedly held that online platforms do not have duty of care to protect users from the communications of other users.

In *Dyroff*, 934 F.3d at 1101, the Ninth Circuit affirmed dismissal of a negligence claim against a website based on its alleged failure to protect a user from misuse of the platform by other users. In holding that the website had no duty of care to protect the plaintiff from the harm caused by other users, the Ninth Circuit explained that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of

its users' content." *Id.* LMK did exactly that: the app provided a content-neutral platform that allowed users to anonymously ask and answer questions.

Other courts in the Ninth Circuit have followed suit in finding that online platforms do not have a duty of care to protect users against third-party content on their platforms. *See In re iPhone Application Litig.*, 2011 WL 4403963, at *9 (dismissing negligence claim based on design of Apple's operating system because plaintiffs failed to show that Apple had a duty to protect users from third-party app developers); *Pirozzi v. Apple Inc.*, 913 F.Supp.2d at 840, 850 (N.D. Cal. 2012) (dismissing negligence claim for Apple's failure to remove apps from the App Store that might allow third parties to violate user's privacy).

Even if a duty of care existed, the Estate and A.K. fail to plausibly allege a breach of that duty and causation. None of the Plaintiffs allege that they informed Lightspace of any allegedly harassing messages or that Lightspace otherwise had any notice of the subject messages. Further, the Estate and A.K. fail to plausibly allege that any conduct on the part of Lightspace proximately caused Carson or A.K.'s injuries. For these reasons, this Court should dismiss Plaintiffs' negligence claim (Count III).

### 2. The Estate and A.K.'s unjust enrichment claim (Count V) is duplicative and fails to allege an unjust retention of a benefit

***First,*** the Estate and A.K.'s unjust enrichment claim is defective because it is merely duplicative of their state law claims. "[A]n unjust enrichment claim is not available [when] it simply duplicates a conventional [breach of contract] or tort claim." *Stitt v. Citibank, N.A.*, 748 F. App'x 99, 102 (9th Cir. 2018). Moreover, California does not recognize unjust enrichment as a standalone claim. *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015).

**Second,** the Estate and A.K. fail to allege Lightspace's "unjust" retention of a benefit conferred by them.  *See Doe v. Epic Games, Inc*., 435 F. Supp. 3d 1024, 1052 (N.D. Cal. 2020) (requiring "unjust" retention of a benefit); *Cumming v. Nipping*, 285 Or. App. 233, 239 (2017) (same under Oregon law).  Retention of a benefit is "unjust" when it was obtained "through mistake, fraud, coercion, or request."  *Astiana*, 783 F.3d at 762.  The Estate and A.K. do not allege that they paid any money to use Lightspace's app (indeed, they cannot do so because the app is free).  They instead allege that Lightspace obtained the benefit of Carson and A.K.'s data, but they do not allege any facts that could plausibly establish that Lightspace unjustly obtained that data.  Am. Compl. ¶ 251.

### 3.  The Estate and Ms. Bride's Oregon UPTA Claim (Count VI) fails to allege the element of a loss of money or property

The Estate and Ms. Bride's Oregon Unfair Trade Practices Act claim fails to allege a loss of "money or property," which is a necessary element for a private party to state a claim under that statute.  *See* ORS § 646.638(1), (8).  They vaguely allege that Lightspace's "unlawful trade practices" caused a "loss of money and property" but do not articulate the money or property allegedly lost.  Nor could they allege a loss because LMK is free to use.  Accordingly, this Court should dismiss Plaintiffs' Oregon UPTA claim.

### 4.  The Foundation fails to state a New York GBL Section 349 or 350 claim (Count VII and VIII)

The Foundation – the only New York party – asserts two claims against Lightspace under New York GBL Sections 349 and 350.  The Foundation's Section 349 claim asserts that Lightspace made misrepresentations to "*users and their parents*" about steps it would take to improve safety, failed to inform them about the dangers of the app, and failed to implement adequate safeguards to prevent bullying.  Am. Compl. ¶ 272.

The alleged misrepresentations appear in LMK's "Guidelines," Am Compl. ¶¶ 80-81, but the Foundation does not allege that it used the app, read, or relied on the guidelines, or that its reliance on those guidelines caused it an actual economic loss.  *See Frank v. DaimlerChrysler Corp.*, 741 N.Y.S.2d 9 (N.Y. App. Div. 2002) (GBL § 349 claim dismissed for lack of economic loss); *Herrick*, 306 F. Supp. 3d at 599 (dismissing GBL sections 349-350 claims against dating website).  To the contrary, the Foundation alleges the deceptive conduct was aimed only at Plaintiffs' "users and their parents."  Am. Compl. ¶ 272.

The Foundation's Section 350 claim is similarly defective.  That claim alleges that Lightspace disseminated false advertising about its product in New York.  Am. Compl. ¶¶ 289-90.  However, the Foundation does not articulate what "false advertising" that Lightspace disseminated, allege that it viewed that advertising, or state the economic injury it suffered.  *See id*. ¶¶ 285-292. Accordingly, this Court should dismiss the Foundation's GBL Section 349 and 350 claims with prejudice.

### 5. A.K.'s Colorado CPA Claim (Count IX) fails to plead a misrepresentation or an economic injury.

"[A] plaintiff must meet the heightened pleading requirements pursuant to Rule 9(b) to prove a deceptive or unfair trade practice" under Colorado's Consumer Protection Act.  *HealthONE of Denver, Inc. v. UnitedHealth Grp. Inc*., 805 F. Supp. 2d 1115, 1120–21 (D. Colo. 2011).  A.K. makes vague allegations that Lightspace made representations about its services but fails to articulate the specific false statements that Lightspace made to A.K. and upon which A.K. relied.  *See Am.* Compl. ¶¶ 293-99.  "Rule 9(b) requires a complaint to 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof.'"  *Id*. (quoting *Koch v. Koch Industries, Inc*., 203 F.3d 1202, 1236 (10th Cir.2000) (citation omitted).

Plaintiff also fails to allege how A.K. was damaged by reliance on those alleged misrepresentations.

### 6. The Estate and AK.'s California UCL Claim (Count XII) fails to plead a misrepresentation or economic injury.

The Estate and A.K.'s UCL Claims are defective for three reasons:

***First,*** the only remedies available under the California UCL are restitution and injunctive relief.  Cal. Bus. & Prof. Code § 17203; *see Sharpe v. Puritan's Pride, Inc.*, 466 F. Supp. 3d 1066, 1071 (N.D. Cal. 2020) (Donato, J.) (UCL remedies "'are generally limited to injunctive relief and restitution'"); *Kane v. Chobani, Inc.*, 2013 WL 5289253, at *6 (N.D. Cal. Sept. 19, 2013) (economic injury is required for a UCL claim).  Plaintiffs lack as basis for injunctive relief for the reasons stated in Section III(C) above.  Plaintiff cannot plausibly allege a claim for restitution of money" or benefits" that were conferred by Plaintiffs to Lightspace because the LMK app is free.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1148 (2003).

***Second***, The Estate and A.K.'s California UCL claim is entirely duplicative of their common law claims.  "[N]egligence and product liability claims may not constitute predicate acts for a UCL claim."  *Stearns v. Select Comfort Retail Corp.*, 2009 WL 4723366, at *12 (N.D. Cal. Dec. 4, 2009).  Moreover, Plaintiffs must "go beyond alleging a violation of common law" to "state a claim under the unlawful prong of § 17200."  *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1044 (9th Cir. 2010).

***Third,*** California UCL claims are also subject Rule 9(b)'s heightened pleading standard.  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  As explained above, the Complaint fails to state with particularity the false statements Lightspace made to the Estate and AK.

### E. **The Foundation Lacks Article III Standing**

An organization does not have any injury sufficient to establish Article III standing unless it has suffered both a "frustration of its organizational mission" **and** a "diversion of its resources." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019). The Foundation cannot show a "frustration of its organizational mission" because its entire purpose is to expend its resources to "combat bullying and cyberbullying." Am. Compl. ¶¶ 149, 155. The Foundation described several efforts in furtherance of that core mission, including efforts relating to bullying on online platforms. *Id*. ¶¶ 149-158. However, the Complaint is devoid of any allegation showing that Foundation diverted resources away from its core mission to address the alleged harm caused by Lightspace's app, opposed from addressing cyberbullying on social media platforms as a portion of its advocacy work. This Court should dismiss the Foundation's claims because it lacks Article III standing to sue on its own behalf.

## IV.   Conclusion

For the reasons stated above, this Court should dismiss Plaintiffs' Amended Complaint with Prejudice.

Dated: August 22, 2022

Respectfully submitted,
OCTILLO

*/s/ Myriah V. Jaworski*
Myriah V. Jaworski, Esq. # 336898
Chirag H. Patel (*Pro Hac Pending*)
600 Broadway, Suite 700
San Diego, California 92101
Telephone: 619-492-4379
mjaworski@octillolaw.com
cpatel@octillolaw.com
*Attorneys for Defendant*
*LightSpace, Inc.*