UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

Priscilla Deason for
Rolls Royce Paschal                                              N/A
Deputy Clerk                                              Court Reporter

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendant:

Not Present                                              Not Present

PROCEEDINGS:    **ORDER DENYING PLAINTIFFS' MOTION FOR DEFAULT
JUDGMENT [244]**

This putative class action concerns alleged misrepresentations Defendant Yolo
Technologies, Inc. ("Yolo") made regarding its anonymous messaging application, YOLO.
(Dkt. 200 (Third Amended Complaint, "TAC").)  Plaintiffs are The Estate of Carson Bride—a
teenager who took his own life after being bullied and harassed on the app—by and through his
appointed administrator, Kristin Bride; and Addison Kennedy, Amber Casperson, and A.O.,
three people who were cyberbullied on the app while they were minors (collectively,
"Plaintiffs").  (*Id.* ¶¶ 1, 15-20.)  Plaintiffs' claims against Yolo's Chief Executive Officer,
Gregoire Henrion, have been dismissed, (Dkt. 231), and Yolo—after defending this case for
several years—is now in default, (Dkt. 228).

Before the court is Plaintiffs' Motion for Default Judgment against Yolo, which contains
"(1) a motion for class certification; [and (2)] motion for default and damages inquest request
for plaintiffs individually and for the class (assuming that the latter would be specified once
class certification is granted and a class notice plan is approved)."  (Dkt. 244 ("Motion" or
"Mot.").)  Based on the record, as applied to the relevant law, the Motion is **DENIED** insofar as
it seeks class certification and **DENIED WITHOUT PREJUDICE** insofar as it seeks default
judgment.[1]

---

[1] The court finds this matter appropriate for resolution without oral argument.  *See* Fed. R. Civ.
P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

## I.    Background

### A.    Allegations in the Third Amended Complaint

Yolo "designed, developed, manufactured, distributed, and delivered" an "anonymous messaging app" called YOLO, which was "widely available primarily to young children as an extension to Snapchat" until former Defendant Snap, Inc. banned the app in 2021.  (TAC ¶¶ 2-3, 15; *see id.* ¶ 10 (alleging that "[w]ithin 48 hours of filing th[is] lawsuit, Snap suspended YOLO").)  The app "allowed users to ask questions and have users anonymously respond, to send polling requests on a completely anonymous basis, and to chat with other users anonymously."  (*Id.* ¶ 48.)  "When Yolo launched YOLO in May 2019, Yolo marketed YOLO to minors and allowed minors to use the YOLO app without verifying or attempting to verify the age of its users."  (*Id.* ¶ 51.)  YOLO had a "Teen" content rating on the Google Play store, "intentionally focusing its marketing and solicitation toward teenagers."  (*Id.* ¶ 52.)  "[I]n YOLO's first week it became the top downloaded app in America, and 11 months later the app had 10 million active users."  (*Id.* ¶ 49.)

Plaintiffs' central allegation in this case is that "Yolo made false and deceptive statements to users when they signed up about the steps Yolo would take to make the app safer."  (*Id.* ¶ 54.)  The challenged misrepresentations include:

1. "When a user first open[ed] YOLO after downloading it from the Apple or Google app store, a pop-up notice fill[ed] the screen and t[old] each prospective user: 'YOLO has no tolerance for objectionable content or abusive users.  You'll be banned for any inappropriate usage.'"  (*Id.* ¶ 55.)
2. "On the first screen of the user's interface with the YOLO app, YOLO state[d]: 'YOLO is for positive feedback only.  No bullying.  If you send harassing messages to our users, your identity will be revealed.'"  (*Id.* ¶ 56.)

---

briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute").  Accordingly, the hearing set for **March 19, 2026**, is **VACATED** and **OFF CALENDAR**.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                           Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

  3. "YOLO's App Store page also state[d]: 'Be kind, respectful, show compassion with other users, otherwise you will be banned.'" (*Id.* ¶ 57.)

  "Contrary to those representations, from the earliest days that YOLO was operational through the time that YOLO was banned by Snap, YOLO routinely did not reveal the identi[t]ies of abusive users, nor did YOLO ban those users, even after abusive users were reported to the app." (*Id.* ¶ 59.)  And "when YOLO users reported other users who were sending bullying or harassing messages, including to YOLO's 'Contact Us' email, YOLO regularly did not respond to their inquiries or take any action in response to them." (*Id.* ¶ 60; *see id.* ¶ 62 (quoting user reviews to this effect).)  Indeed, Yolo "knew or should have known . . . when [the app] reached 10 million daily active users, that it could not possibly provide meaningful safeguards to so many active users—including the safeguards Yolo told its users and users' parents it would implement—given that it had fewer than 10 employees." (*Id.* ¶ 50.)

  Carson Bride ("Carson") is one teenager who was bullied on YOLO. (*Id.* ¶ 66.)  "From January 23, 2020, to June 22, 2020," during Carson's sophomore year in high school, "Carson received at least 105 messages via the YOLO app," with 62 of those "messages includ[ing] content that was meant to humiliate Carson, often involving sexually explicit and disturbing content." (*Id.* ¶¶ 65, 70-71.)  For example, Carson received messages saying, "I'm gonna push u into the Grand Canyon," "When u passed out in Biology I put my balls in ur mouth," "When you passed out I ate your ass," "are you a virgin," "I WANT YOUR WEINER NOWWWW," "why do you make my peepee so hard," "How big is your penis," and "How big are your balls." (*Id.* ¶¶ 72-73, 79.)  "[O]n June 7, 2020, after receiving numerous abusive, harassing, and upsetting messages on YOLO, Carson searched YOLO's website and other websites searching for 'YOLO reveal,' 'YOLO username reveal hacks,' and other keyword searches in an effort to find out who was sending abusive messages to him." (*Id.* ¶ 74.)  "In responding to numerous abusive messages, Carson asked the anonymous users sending him abusive messages to voluntarily 'S/U' (Swipe Up) to reveal their identities.  None of the users chose to reveal themselves." (*Id.* ¶ 76.)  On June 23, 2020, at the age of 16, "Carson took his own life by hanging himself at his home." (*Id.* ¶¶ 8, 15, 65.)  "[T]he morning of Carson's death, the last web history found from his phone shows that Carson was again searching 'Reveal YOLO Username Online,' which reflects his final painstaking attempt to find out who was sending abusive anonymous messages to him on the YOLO app." (*Id.* ¶ 80.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                          Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Addison Kennedy, Amber Casperson, and A.O. also experienced bullying and harassment on YOLO while they were minors. (*See id.* ¶¶ 98-121.) Kennedy "received numerous bullying anonymous messages on YOLO," "includ[ing] statements like '[Kennedy] does drugs,' which is false; 'I hope you die'; and 'I'm gonna kill you.'" (*Id.* ¶ 100.) "The anonymous messages that [Kennedy] received on YOLO made her consider whether she should kill herself and give into what other people were saying about her. It lowered her self-esteem for years. It altered her eating habits. And it made her feel worthless and like a waste of space and a life." (*Id.* ¶ 104.) Casperson, after "suffer[ing] the fatal loss of her 16-year-old brother, who took his own life on January 2, 2020," "posted a story on Snapchat where she was depicted spending time with her friends. Immediately after that posting, [Casperson] received anonymous messages on YOLO that stated: 'You look happy without your brother – you should go kill yourself too.'" (*Id.* ¶¶ 108-09.) As to A.O., "[d]uring the pandemic, A.O. posted a question on YOLO: 'What would we do if we could be in the same room?' A.O. received an anonymous message on YOLO: 'We would have sex together.' A.O. felt disgusted and replied, 'No thanks.'" (*Id.* ¶¶ 117-18.)

Based on these facts, Plaintiffs bring claims for: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) unjust enrichment; (4) violation of the Oregon Unlawful Trade Practices Act; (5) violation of New York General Business Law § 349; (6) violation of New York General Business Law § 350; (7) violation of the Colorado Consumer Protection Act; (8) violation of the Pennsylvania Unfair Trade Practices Law; and (9) violation of the Minnesota False Statement in Advertising Act. (*See id.* ¶¶ 178-238.)

## B.    Procedural History

Plaintiffs filed this case against Yolo and other defendants on May 10, 2021 in the Northern District of California. (Dkt. 1.) Judge James Donato transferred the case to this District under 28 U.S.C. Section 1404(a) on August 18, 2021. (Dkt. 45; *see* Dkt. 53.) After motions to dismiss were filed in September 2021, (*see* Dkts. 71-77, 79); and after numerous stipulations to extend the hearing on those motions pending settlement discussions, (*see* Dkts. 82, 86, 88, 90, 94, 96, 98, 102, 105), the parties stipulated to Snap, Inc.'s dismissal

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

with prejudice on June 17, 2022, (Dkt. 111), and Plaintiffs filed a First Amended Complaint on June 27, 2022.  (Dkt. 113.)

On January 10, 2023, the court dismissed Plaintiffs' First Amended Complaint on the basis of immunity under Section 230 of the Communications Decency Act.  (Dkt. 142.)  On August 22, 2024, the Ninth Circuit affirmed the court's dismissal of Plaintiffs' products liability claims, leaving Plaintiffs' misrepresentation claims remaining on remand.  (Dkt. 151.)  The mandate issued on September 16, 2024.  (Dkt. 152.)

On October 24, 2024, Plaintiffs filed a Second Amended Complaint.  (Dkt. 160.)  On February 21, 2025, the court granted in part and denied in part Yolo's motion to dismiss the Second Amended Complaint.  (Dkt. 170 ("MTD Order").)  In the MTD Order, the court resolved several issues, including rejecting Yolo's argument that the court lacked CAFA subject matter jurisdiction, determining that the two plaintiffs who were no longer minors should no longer be proceeding under pseudonyms, and finding that Plaintiffs failed to show an organization plaintiff had standing.  (*Id.* at 6-10.)  The court concluded that Plaintiffs failed to adequately allege an inadequate remedy at law and therefore dismissed Plaintiffs' prayer for restitution and disgorgement of Yolo's revenues and other wrongfully-acquired monies, and a corrective advertising campaign; that Plaintiffs failed to show any likelihood of future harm and therefore dismissed Plaintiffs' prayer for orders enjoining YOLO from future operation or unlawful practices.  (*Id.* at 15-18.)  The declined to dismiss under Rule 9(b) Plaintiffs' fraudulent misrepresentation claims, and also as not persuaded at that early stage of the proceedings that the First Amendment barred Plaintiffs' claims.  (*Id.* at 11-14.)  And the court declined to resolve numerous arguments that the parties failed to address in adequate detail, finding those arguments better resolved at a later stage such as class certification or summary judgment.  (*Id.* at 18-19.)  At the hearing on this motion, the court advised both parties that it did not feel that either side offered the quality of argument, the quality of research, or the attention to detail that this case deserves.

On May 13, 2025, the court denied Yolo's Motion for Judgment on the Pleadings, which was based on Yolo's argument that Plaintiffs' claims were barred by relevant Terms of Service, including that users represented they were 18 years or older or under a parent's supervision, and that New York law applies.  (Dkt. 187 ("MJOP Order").)  Again, "the court [was] not persuaded

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

that the relief [Yolo sought]—dismissal of all of Plaintiffs' claims—[was] warranted at this time.  Simply put, the court finds the matters presented in the Motion are fact-intensive questions better suited for summary judgment." (*Id.* at 7 (citation modified).)  The court's reasoning was based at least in part on the fact that "as [Yolo] concede[d], Plaintiffs allege and argue they disaffirm the TOS." (*Id.*)

On July 1, 2025, the court granted the application of Dentons US LLP to withdraw as counsel for Yolo, and also granted Plaintiffs' motion for leave to file a Third Amended Complaint to add Henrion as a defendant. (Dkt. 198.)  The court ordered Yolo to obtain replacement counsel by August 15, 2025. (*Id.*)  On August 20, 2025, the court issued an Order Extending Time for Yolo to Substitute Counsel Before Striking Answer and Entering Default. (Dkt. 220.)  When Yolo failed to substitute counsel by the deadline, the court struck Yolo's answer and entered default against Yolo. (Dkt. 228.)  The Clerk of Court entered default against Yolo based on the court's order on September 23, 2025. (Dkt. 229.)

On September 29, 2025, the court granted Henrion's Motion to Dismiss, dismissing the Third Amended Complain as against Henrion without leave to amend. (Dkt. 231 ("Henrion Order").)  Having dismissed Henrion, the court directed Plaintiffs, if they wished to seek default judgment against Yolo, to file a motion for default judgment against Yolo on or before October 30, 2025. (*Id.* at 9.)

On October 21, 2025, Plaintiffs filed a Notice of Appeal of the Henrion Order. (Dkt. 233.)  The Ninth Circuit assigned a case number and set a briefing schedule. (Dkt. 234.)

On October 30, 2025, Plaintiffs filed a Motion for Default Judgment against Yolo in which Plaintiffs requested that the question of damages be resolved after resolution of the appeal of the Henrion Order. (Dkt. 237.)  The court denied without prejudice the Motion for Default Judgment; although the court noted the Henrion Order was not a final judgment and therefore the court believed that the Ninth Circuit lacked jurisdiction over the appeal, "in an abundance of caution and in deference to the Ninth Circuit, the court" ruled that it "will defer making any rulings as to Yolo until the appeal of the Henrion Order is finalized." (Dkt. 239 at 2.)  The court then stayed the case pending resolution of the Henrion Order appeal. (Dkt. 240.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

On November 4, 2025, the Ninth Circuit issued an order explaining that "[a] district court's dismissal order is not appealable under 28 U.S.C. § 1291 unless it disposes of all claims as to all parties or unless judgment is entered in compliance with Federal Rule of Civil Procedure 54(b)," and the Ninth Circuit "may therefore lack jurisdiction over this appeal." (Ninth Circuit Case No. 25-6703, Dkt. 5 at 1.)  The Ninth Circuit ordered that Plaintiffs "must either file a motion to voluntarily dismiss this appeal or file a statement explaining why it should not be dismissed."  (*Id.* at 2.)  Plaintiffs voluntarily dismissed the appeal, (Ninth Circuit Dkt. 9), and the mandate issued on January 9, 2026, (Ninth Circuit Dkt. 10; Dkt. 242).

On the same day Plaintiffs voluntarily dismissed the Henrion Order appeal, they filed before this court a Motion for Rule 54(b) Certification of the Henrion Order.  (Dkt. 241.)  The court denied that motion and directed Plaintiffs to file a complete motion for default judgment so that the case against Yolo may be resolved and any Ninth Circuit appeal would involve all claims and parties.  (Dkt. 243.)

This Motion followed.  (Dkt. 244.)

## II.    Class Certification

Because Plaintiffs continue to seek relief on a classwide basis, they first seek class certification.  (*See* Mot. at 1 ("[W]here a putative class action is brought and the defendant has defaulted, the Plaintiffs seeking default first should file a motion to certify the class, and once granted, allow for the class members to be notified of the class and given an opportunity to opt out of the class.").)  In particular, Plaintiffs ask the court to certify the following class:

> All people who used YOLO from May 2019 to May 2021 when they were 13 to 17 years old, and all people who will use YOLO in the future (should YOLO renew its operations) through the date of judgment in this action.

(TAC ¶ 122; Mot. at 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Federal Rule of Civil Procedure 23 "enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). Under Rule 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are respectively referred to as numerosity, commonality, typicality, and adequacy. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). In addition, as applicable here, (*see* Mot. at 9-11), Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

After default, courts accept as true the well-pleaded factual allegations in the complaint, except those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam). However, this general principle does not mean that mere allegations in a complaint are sufficient to establish Rule 23's class certification requirements. *Davis v. Hutchins*, 321 F.3d 641, 648–49 (7th Cir. 2003); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340 (4th Cir. 2006). ("[A]lthough a default judgment has the effect of deeming all factual allegations in the complaint admitted, it does not also have the effect of 'admitting' the independent legal question of class certification."). Indeed, Rule 23 "does not set forth a mere pleading standard," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011), and "[c]ompliance with [Rule 23] must be actual, not presumed." *Partington*, 443 F.3d at 340. A party seeking class certification "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Food, LLC*, 31 F. 4th 651, 665 (9th Cir. 2022). And they must do so "regardless of the defendant's admissions." *Partington*, 443 F.3d at 340.

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350-51. In other words, a defendant's failure to appear "does not lessen [the plaintiff's] burden to affirmatively

**CIVIL MINUTES – GENERAL**                                                            **8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                 Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

show that the Rule 23 requirements are met." *Wang v. Def. Tax Grp. Inc.*, 2020 WL 6204578, at *2 (C.D. Cal. Aug. 10, 2020) (citing *Dukes*, 564 U.S. at 350; *Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014) ("Regardless of Bennett Law's failure to respond and the resulting limitation in Whitaker's evidentiary options, Whitaker was still able to establish a reasonable basis to believe that numerous class members exist.")). This standard serves the important function of "protect[ing] absent class members whose rights could be affected by the certification." *Partington*, 443 F.3d at 340. "Allowing certification by default or because the defendant has admitted that the class exists, with no independent analysis or determination by the district judge, would remove this important protection." *Id.*

As a preliminary matter, the court observes that the court has identified only one case from Plaintiffs' Motion in which class certification was granted after a defendant's default. (*See* Mot. at 1 (citing *Yauney v. HCI, LLC*, 2024 WL 4875377, at *2 (C.D. Cal. Oct. 3, 2024)).) For reasons discussed throughout this Order, the court finds *Yauney* distinguishable. In addition, even if Plaintiffs had provided more authority regarding class certification regarding default, the court is not persuaded that class certification is appropriate here for reasons the court now explains.

**A. Numerosity**

The first Rule 23(a) requirement is that the "class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "No exact numerical cut-off is required; rather, the specific facts of each case must be considered." *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. EEOC.*, 446 U.S. 318, 330 (1980)). "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members." *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. 2015); *see also Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 473-74 (C.D. Cal. 2012). A plaintiff need not "establish the precise number of class members," *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 WL 5789237, at *3 (C.D. Cal. Oct. 25, 2013), but he "must be prepared to prove that there are *in fact* sufficiently numerous parties," *see Dukes*, 564 U.S. at 350.

Plaintiffs argue "the numerosity requirement is easily satisfied" because "[d]uring the class period, millions of people were using the app, including 10 million daily users and 26

**CIVIL MINUTES – GENERAL**                                                                 9

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

million downloads." (Mot. at 3-4.) The court makes two observations regarding this argument. First, Plaintiffs make no effort to "prove that there are *in fact* sufficiently numerous parties," *see Dukes*, 564 U.S. at 350. Rather, they rely on the court to deduce that there *must* have been at least 40 people ages 13 to 17 in the 10 million daily users and 26 million downloads. (Mot. at 3-4.) Although the court ultimately finds this inference appropriate, especially given Plaintiffs' allegations that the app was heavily marketed to teens, Plaintiffs' approach seems to ignore their burden to show that the class certification requirements are actually, not presumably met, "by a preponderance of the evidence" and "regardless of the defendant's admissions." *Olean Wholesale*, 31 F. 4th at 665; *Partington*, 443 F.3d at 340; *Dukes*, 564 U.S. at 350-51; *see, e.g.*, *Wang*, 2020 WL 6204578, at *2 ("Common sense and reasonable inferences cannot make up for Plaintiff's failure to present *any* evidence that even a *single* other person received unwanted text messages like the ones she received.") (citation modified, emphases in original); *Floyd v. Saratoga Diagnostics, Inc.*, 2021 WL 2139343, at *3 (N.D. Cal. May 26, 2021) ("Plaintiff has not provided evidence that a single other individual received the same fax from Defendants.").

Second, that Plaintiffs seek to bind on a judgment entered by default a class of up to *26 million* people is remarkable both for the fact itself and for the fact that Plaintiffs seem blithely unconcerned with it. The Rule 23 "analysis is designed to protect absent class members whose rights could be affected by the certification." *Partington*, 443 F.3d at 340. Here, those rights are significant—Plaintiffs' allegations involve the bullying of children leading to multiple teens taking their own lives. Under any circumstances, the court is called upon to examine the evidence to ensure it "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *Dukes*, 564 U.S. at 350-51, but that function is all the more important in a case with such serious allegations involving minors and when Plaintiffs indicate 26 *million* people could be bound by the court's decision.

In sum, while it is very likely numerosity is satisfied, Plaintiffs fail to present any *evidence* that there are sufficiently numerous class members fitting the age profile and date range of their proposed class or to reckon with the implications of binding so many millions of people in a class on default judgment.

**B.      Typicality and Adequacy**

___

**CIVIL MINUTES – GENERAL**                                                            **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Plaintiffs have also not carried the burden to show that they are typical or adequate class representatives.  The purpose of Rule 23's typicality and adequacy requirements is to ensure that the plaintiff's interests align with the class's interests.  *Wiley v. American Financial Network, Inc.*, 2023 WL 4681538, at *2 (C.D. Cal. July 3, 2023) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997) (explaining that "both [requirements] look to the potential for conflicts in the class")).  Typicality and adequacy are not met, and class certification is not appropriate, when there are issues and defenses unique to the named plaintiff's circumstances that could "preoccup[y]" the named plaintiff and "skew the focus of the litigation."  *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997); *see Hanon*, 976 F.2d at 508 ("A named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it" or when issues or defenses unique to the named plaintiff "threaten to become the focus of the litigation") (cleaned up).

Plaintiffs maintain that "the typicality requirement is satisfied" because "[e]ach of the Plaintiffs had relied or reasonably relied on the statement of YOLO which turned out to be false."  (Mot. at 8.)  But Plaintiffs' lack of typicality and adequacy is evident from the class definition alone:

> All people who used YOLO from May 2019 to May 2021 when they were 13 to 17 years old, and all people who will use YOLO in the future (should YOLO renew its operations) through the date of judgment in this action.

(TAC ¶ 122; Mot. at 5.)  First, Plaintiffs do not seek to represent only people who were *bullied* on the app.  They seek to represent all people who *used* the app, a large proportion of which were likely not bullied, and the vast majority of which did not suffer as extremely as Carson, Kennedy, Casperson, and A.O.  Plaintiffs are decidedly atypical of people who used the app and were not bullied.  Second and perhaps even more amazingly, the class Plaintiffs seek to represent *includes the bullies*—of whom Plaintiffs plainly are not typical or adequate to represent.

**CIVIL MINUTES – GENERAL**                                                            11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Another issue is this: Ms. Bride appears to purport to bring a wrongful death action in addition to a survival action. (*See* TAC ¶ 194 ("Yolo's fraudulent misrepresentations directly contributed to Carson Bride's wrongful death and contributed to Carson's and Kristin's emotional harm."); *id.* at 58 ("For compensation to Plaintiff Estate of Carson Bride for the physical and emotional pain and distress which Plaintiff Carson Bride suffered during months preceding his death from the use of the defendants' apps, for his wrongful death, for the pecuniary loss and loss of society, companionship and services to the parents of Carson Bride, including punitive damages against Yolo for the gross, continued, and callous misrepresentations and non-response of Yolo toward Kristin Bride and the Estate of Carson Bride, even after being notified of the Carson's death multiple times, and expenses incurred for services rendered to Carson Bride, decedent, including charges for burial and memorial services.").) "Because of [Ms. Bride's] unique situation, it is predictable that a major focus of the litigation will be on a defense unique to" her. *Hanon*, 976 F.2d at 509. For example, Yolo would seek to prove at trial that any misrepresentations were not the cause of Carson's tragic death. Yolo "will understandably spend substantial time at trial eliciting testimony" to this effect, "preoccup[ying]" Ms. Bride, and "skew[ing] the focus of the litigation," all "likely to the class's detriment." *Alaska*, 123 F.3d at 1321; *Wiley*, 2023 WL 4681538, at *3 (citing *Park v. Webloyalty.com, Inc.*, 2019 WL 1227062, at *12 (S.D. Cal. Mar. 15, 2019) ("While [the plaintiff] may prevail on this defense, [the defendant's] focus on it shows it will be litigated. . . . He will likely be forced to expend time and effort on this, possibly to the detriment of the class."); *see Nghiem*, 318 F.R.D. at 383 n.4 ("It does not matter whether Defendants will ultimately prevail on these defenses. What matters is that Defendants will assert these defenses, and they have a factual basis for doing so.")); *Banarji v. Wilshire Consumer Capital, LLC*, 2016 WL 595323, at *3 (S.D. Cal. Feb. 12, 2016) (denying class certification when "the majority of the proposed class may suffer as Plaintiff will be engrossed with disputing [the defendant's] arguments regarding [his] individual case"). These differences make Ms. Bride neither typical of the class nor an adequate representative. *See CE Design Ltd. v. King Architectural Metals, Inc.*, 637 F.3d 721, 726 (7th Cir. 2011) (explaining that a named plaintiff "who is likely to devote too much attention to rebutting an individual defense may not be an adequate class representative").

Although it is uncomfortable, the court must also acknowledge its concerns regarding the adequacy of Plaintiffs' counsel to represent this class of millions. It appears to the court that,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

especially after the first Ninth Circuit appeal, the motivation to devote the time, energy, and resources necessary to vigorously litigate this case has diminished.  As discussed, at the hearing on Yolo's Motion to Dismiss the Second Amended Complaint, the court advised both parties that it did not feel that either side offered the quality of argument, the quality of research, or the attention to detail required for this case.  Unfortunately, the effort demonstrated following that discussion has not meaningfully increased, as reflected in, for example, Plaintiffs' untimely appeal of the Henrion Order and belated request for Rule 54(b) certification, in addition to the numerous issues identified in this Order.  The court does not question the experience, credentials, or capability of counsel, (*see* Han Decl. ¶¶ 3-6), but rather notes the apparent and unfortunate reality that the care and attention to detail needed to represent Plaintiffs and this class of numerous minors is simply not demonstrated by the record.

Typicality and adequacy have not been demonstrated.

**C.    Commonality and Predominance**

Nor has, at least, predominance.  Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A common question is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member."  *Olean*, 31 F. 4th at 663 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  For commonality, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'" *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 958 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350).  The analysis "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Inc. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  Even a "'single *significant* question of law or fact'" is sufficient.  *Abdullah*, 731 F.3d at 957 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

"Rule 23(b)(3)'s predominance inquiry 'is far more demanding' than Rule 23(a)'s commonality requirement." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1008 (9th Cir. 2018) (quoting *Amchem Prods.*, 521 U.S. at 623-24). "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation modified). "The main concern . . . is the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545-46 (9th Cir. 2013) (citation and internal quotation marks omitted). Each element of a claim need not be susceptible to class-wide proof, *Amgen*, 568 U.S. at 468-69, and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class," *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods*, 577 U.S. at 453-54 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-24 (3d ed. 2005)).

"In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim." *Olean*, 31 F. 4th at 665 (citing *Dukes*, 564 U.S. at 349-50). "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3)). Here, Plaintiffs' primary cause of action is fraudulent misrepresentation, the elements of which are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)).

Even if there are some common questions, for example whether it was a misrepresentation that Yolo would reveal the identity of those engaging in bullying behavior, any common questions do not predominate; rather, "the balance between individual and

**CIVIL MINUTES – GENERAL**                                        **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

common issues" tips in favor of individual issues here. *Wang*, 737 F.3d at 545-46. Consider this: Yolo said, "No bullying. If you send harassing messages to our users, your identity will be revealed." (TAC ¶ 55.) It also said "YOLO has no tolerance for objectionable content or abusive users. You'll be banned for any inappropriate usage." (*Id.* ¶ 56.) What is "bullying" in this context? What are "harassing messages," "objectionable content," and "inappropriate usage"? Who are "abusive users"? How severe or frequent does a user's conduct have to be for Yolo to be required to take action? These individualized issues go to the heart of Plaintiffs' claims. Consider also the element of justifiable reliance, which is rife with individualized issues including because, as already explained, Plaintiffs seek to represent a class of people that includes (1) people who were not bullied and (2) the bullies themselves. Even if commonality is met, predominance is not.

**D.    Superiority**

Plaintiffs maintain that "[a] class action is the superior method available for the efficient adjudication of this litigation, because the claims of the individual National Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against the Defendant. Thus, it would be impracticable for the members of the Class to individually seek redress for the Defendant's wrongful conduct. Class action treatment avoids the waste and duplication inherent in potentially thousands of individual actions and conserves the resources of the courts. In addition, the prosecution of separate actions by individual members of the Class would create a foreseeable risk of inconsistent or varying adjudications, which would establish incompatible results and standards for Yolo." (Mot. at 11-12.) The court is not so sure this is the case.

Factors relevant to predominance and superiority include:
(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Fed. R. Civ. P. 23(b)(3).  Factor (A) "weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation." *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 444 (E.D. Cal. 2013).  This case concerns minor children who were bullied or harassed by anonymous YOLO users; many of those people will likely have "an emotional stake in the litigation." *See id.*  And Ms. Bride is "seeking 100 million dollars." (Bride Decl. ¶ 3.i.)  Especially given the individualized issues regarding whether a particular bad-actor-class-member's actions can be described as bullying or harassment, the court is not sufficiently certain this is the sort of case where individual "claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" to find that a class action is the superior way of resolving the allegations presented in this case.  *Hanon*, 976 F.2d at 508; *see Barbosa*, 297 F.R.D. at 444 ("In this case, where monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored."); *Estakhrian v. Obenstine*, 2016 WL 6517052, at *7 (C.D. Cal. Feb. 16, 2016) ("Here, plaintiffs do not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member."); *Munoz v. PHH Corp.*, 2013 WL 2146925, at *26 (E.D. Cal. May 15, 2013), *report and recommendation adopted,* 2015 WL 3703972 (E.D. Cal. June 11, 2015) (finding superiority met where, among other considerations, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so" and "[a]lthough the potential recovery is not insubstantial, given the costs of litigation and the superior resources and sophistication of the Defendants, no individual plaintiff is likely to have the means or incentive to pursue this litigation on his or her own").

For reasons including those the court just described, the court finds class certification inappropriate in this case.  Plaintiffs' request for class certification in the Motion is therefore **DENIED**.  Plaintiffs may only seek relief in this case as to themselves individually.

### III.    Default Judgment

The court therefore turns to whether it is appropriate to grant Plaintiffs default judgment. The court examines (A) whether Plaintiffs meet the procedural requirements for default

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                  Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

judgment, (B) whether Plaintiffs meet the substantive requirements for default judgment, and (C) whether it is appropriate to grant the particular relief Plaintiffs seek.[2]

### A.      Procedural Requirements

A party seeking default judgment must satisfy the procedural requirements of the Federal Rules of Civil Procedure and the Central District of California's Local Rules. *Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc.*, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018).  Under Federal Rule of Civil Procedure 55(b), a party may only seek default judgment from the court following an entry of default by the Clerk of Court.  Fed. R. Civ. P. 55(b).  The party also must comply with Local Rule 55-1 by submitting a declaration alongside the motion for default judgment that includes the following information:

> (1) when and against what party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act (50 U.S.C. App. § 521) does not apply; and (5) that notice has been served on the defaulting party, if required by F.R.Civ.P. 55(b)(2).

L.R. 55-1.  Plaintiffs have met most of these requirements.  Pursuant to the court's Order Striking Answer and Entering Default Against Yolo, (Dkt. 228), the Clerk of Court entered default against Yolo on September 23, 2025.  (Dkt. 229; Dkt. 244-2 (Declaration of Joyoun

---

[2] Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject matter jurisdiction and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place.").  Because of the unique procedural posture of this case, the court has already evaluated and confirmed its subject matter jurisdiction, (*see* MTD Order at 6-7), and personal jurisdiction over Yolo, who appeared and defended this action for years, is not in question.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Han, "Han Decl.")) ¶ 4.)  Yolo is not an infant, incompetent person, or person protected by the Servicemembers Civil Relief Act.  (Han Decl. ¶¶ 19-20.)

However, the court finds no indication that notice of the Motion has been served on Yolo. Federal Rule of Civil Procedure 55(b)(2) provides that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing."  Plaintiffs did not provide any evidence of such notice with the Motion.  (*See generally* Dkt.)

## B.    Substantive Requirements (*Eitel* Factors)

Even if Plaintiffs had complied with all procedural requirements, the court would have sufficient questions regarding whether the substantive requirements are met to deny default judgment.  When a party seeking default judgment meets the procedural requirements, the court considers the factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), to determine whether to grant the requested default judgment, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72.  "The district court's decision whether to enter a default judgment is a discretionary one."  *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

## 1.  Possibility of Prejudice to Plaintiffs

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered."  *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002).  Although Yolo appeared and vigorously defended this action for years, its counsel ultimately withdrew amidst nonpayment of fees and the specter of bankruptcy, and default was

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                         Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

entered when Yolo failed to substitute any new counsel even after the court extended the deadline to do so.  (*See* Dkt. 198 (Order Granting Motion to Withdraw); Dkt. 220 (Order Extending Time for Yolo to Substitute Counsel); Dkt. 228 (Order Striking Answer and Entering Default).)  If default judgment is not entered, Plaintiffs will "likely be without other recourse for recovery."  *PepsiCo*, 238 F. Supp. 2d at 1177; *see Seiko Epson Corp. v. Prinko Image Co. (USA)*, 2018 WL 6264988, at *2 (C.D. Cal. Aug. 22, 2018) ("Given Defendant's unwillingness to answer and defend, denying default judgment would render Plaintiffs without recourse."); *Amini Innovation Corp. v. KTY Intern. Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) ("As the Defendant has not appeared in this action, a default judgment is the only means available for compensating Plaintiff.").  Therefore, the court finds the first *Eitel* factor weighs in favor of granting default judgment.

> ### 2.  & 3.  The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

Even when default is entered, courts must still determine whether the facts alleged give rise a cognizable cause of action because "claims [that] are legally insufficient . . . are not established by default."  *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).  The second and third *Eitel* factors address the substantive merits of a plaintiff's claims and the sufficiency of the complaint, and "require that a plaintiff state a claim on which [the plaintiff] may recover."  *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003); *Eitel*, 782 F.2d at 1471; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (explaining "the issue [as to the second and third factors] is whether the allegations in the complaint are sufficient to state a claim"); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d 1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together.").

Plaintiffs argue that the court "has already reviewed through significant motion practice" the TAC's allegations, and those allegations "properly allege the elements for all causes of action against YOLO."  (Mot. at 14.)  Plaintiffs do not cite any authority for the notion that surviving a motion to dismiss—that is, rejecting certain challenges to a pleading—necessarily establishes *Eitel* factors 2 and 3, and without such authority, the court is not so sure the court's decision not to dismiss all of the claims in the Second Amended Complaint (*see generally* MTD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Order) is as conclusive as Plaintiffs suggest.  The court made clear in its written MTD Order and in its remarks at the hearing that even Plaintiffs' surviving claims faced significant obstacles at summary judgment and beyond.

The court's primary concern regarding *Eitel* factors 2 and 3 is this.  As noted, the elements of a fraudulent misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damages."  *Robinson Helicopter*, 34 Cal. 4th at 990.  And again, here are Yolo's statements that Plaintiffs challenge in this case as fraudulent misrepresentations:

- "YOLO is for positive feedback only. No bullying. If you send harassing messages to our users, your identity will be revealed."
- "YOLO has no tolerance for objectionable content or abusive users. You'll be banned for any inappropriate usage."
- "Be kind, respectful, show compassion with other users, otherwise you will be banned."

(TAC ¶¶ 55-57.)  The court is hard pressed to conclude that the TAC adequately alleges that, as to element one, those statements were plausibly false promises to future bullying victims (as opposed to threats to bullies); that, as to element two, Yolo knew that by making these statements it was making false promises to future victims; as to element three, that Yolo intended to induce reliance from future victims that Yolo would take affirmative action if bullying, harassment, inappropriate usage, unkind, disrespectful, or noncompassionate behavior occurred; or, as to element four, that that any reliance Plaintiffs exhibited on these statements as promises that Yolo would take such action was justified.  *See Robinson Helicopter*, 34 Cal. 4th at 990.

Similarly, in the court's view there is a serious question regarding whether the statements challenged as misrepresentations are puffery.  The court did not address this issue at the motion to dismiss stage because of an inadequately-developed record, (*see* MTD Order at 19), but that did not mean Plaintiffs' claims were necessarily adequately pleaded.  Indeed, the court at oral argument noted that the issue had the potential to be nuanced and thorny.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                  Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Yolo's First Amendment defense also comes into play here. "Content moderation by social media platforms is generally considered expressive activity and is protected under the First Amendment." *Bogard v. TikTok Inc.*, 2025 WL 604972, at *19 (N.D. Cal. Feb. 24, 2025). At the motion to dismiss stage, the court found "it [was] not clear from the face of the SAC or from [Yolo's] briefing" that Plaintiffs' claims should be dismissed based on the First Amendment, but it was far from clear that more serious questions regarding the First Amendment would not be present at summary judgment. (MTD Order at 12-14; *see also id.* at 14 ("Accordingly, the court is unpersuaded *at this stage of the proceedings* that Plaintiffs' claims are barred by the First Amendment.").) Consider, for example, a scenario in which this case had proceeded through discovery and Yolo contended that it reviewed some of the messages at issue and had determined that, for whatever reason, those messages did not violate Yolo's community standards such that they should be taken down. The court's review of that decision could implicate the First Amendment. *See Snyder v. Phelps*, 562 U.S. 443, 451 (2011) ("The Free Speech Clause of the First Amendment—'Congress shall make no law ... abridging the freedom of speech'—can serve as a defense in state tort suits . . . ."); *NetChoice, LLC v. Bonta*, 770 F. Supp. 3d 1164, 1198 (N.D. Cal. 2025) ("Requiring a business to enforce its own published content policies and community standards to the satisfaction of the State would burden the business's right to exercise its editorial judgment whether to permit or prohibit any given content in any given instance.").

Separately, Plaintiffs maintain they "believe that the state common law claims (fraudulent and negligent misrepresentation, unjust enrichment) may be resolved by California common law." (Mot. at 13.) Plaintiffs acknowledge the issue is important, both because they address it "[a]s an initial matter" and reference that "a court must ensure that the certification of a nationwide class under the laws of a single state comports with due process." (*Id.*) Yet Plaintiffs do little to support their "belie[f]" that California law applies, and wholly fail to raise or address arguments Yolo twice made in this litigation that New York law applies based on a choice-of-law provision in Yolo's Terms of Service—an argument that, each time presented, the court left unresolved not because Yolo's argument was plainly unmeritorious but because the record was not yet sufficiently developed. (MTD Order at 18-19; MJOP Order at 7-8.)

**CIVIL MINUTES – GENERAL**                                                                    **21**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                           Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

For reasons including those just described, the court has concerns regarding whether the second and third *Eitel* factors weigh in favor of entering default judgment.

### 4. Sum of Money at Stake

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This factor compares the "recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." *United States v. Bronster Kitchen, Inc.*, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). "However, when 'the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate'" even for significant sums. *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

Though Plaintiffs do not provide a total estimate of the damages they seek, Ms. Bride alone is "seeking 100 million dollars." (Bride Decl. ¶ 3.i.) Plaintiffs' statement, with no further argument or citation to caselaw, that "the relief sought is directly proportional to the serious and widespread harm alleged in the Third Amended Complaint," (Mot. at 14-15), does little to persuade the court that it should exercise its discretion to enter default judgment. *See Aldabe*, 616 F.2d at 1092.

### 5. Possibility of a Dispute Concerning Material Facts

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. "The general rule is that a defaulting party admits the facts alleged in the complaint as true." *Constr. Laborers Tr. Funds for S. Cal. v. Anzalone Masonry Inc.*, 316 F. Supp. 3d 1192, 1202 (C.D. Cal. 2018). Thus, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of a dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (citing *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010)). But here, for reasons including those discussed with respect to the second and third *Eitel* factors, the court has difficulty concluding there is not a possibility of a dispute concerning material facts—in fact, the court has reason to believe there would be such disputes. Once

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                               Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

again, Plaintiffs' failure to engage meaningfully with this factor—addressing it in only five lines without a single citation to any authority, (Mot. at 15)—shifts the burden entirely to the court to determine its impact on the default judgment analysis.

### 6. Whether Default Was Due to Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177. Here, there can be little question that Yolo's failure to defend this case is not due to excusable neglect, as Yolo plainly knew the deadline to substitute counsel (having successfully sought an extension of that deadline) yet failed to meet it. *See Beyond Fin., LLC v. Fid. Debt Relief, LLC*, 2022 WL 22841121, at *5 (C.D. Cal. Oct. 11, 2022) (finding fifth and sixth *Eitel* factors weighed in favor of granting default judgment where "it [was] virtually certain that Defendants' failure to litigate is deliberate rather than due to excusable neglect because [a defendant] communicated extensively with Plaintiffs' counsel and was repeatedly advised to retain a lawyer and appear in the case, yet failed to do so"); *Adobe Sys. Inc. v. Kern*, 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009) ("Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect."); *Landstar Ranger*, 725 F. Supp. 2d at 922 (finding "the possibility of excusable neglect [was] remote" when the defendant was properly served). The court concludes that the sixth *Eitel* factor weighs in favor of entering default judgment.

### 7. Policy Favoring Decision on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation omitted). While "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472 (citation omitted), "this preference, standing alone, is not dispositive," *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. 1996)). Accordingly, "when a defendant fails to appear and respond, default judgment is appropriate." *Allstate Life Ins. Co. v. Markowitz*, 590 F. Supp. 3d 1210, 1217 (C.D. Cal. 2022) (citation omitted); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (similar). Defendant's choice not to defend itself in this case renders a decision on the merits "impractical, if not impossible." *PepsiCo Inc.*, 238 F. Supp. 2d at 1177. Although this means

**CIVIL MINUTES – GENERAL**                                          23

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

"the preference to decide cases on the merits does not preclude a court from granting default judgment," *id.* (internal quotation omitted), this factor only underscores the other concerns the court has detailed throughout this Order.

In summary, on balance, the court finds Plaintiffs have made an inadequate showing that the *Eitel* factors weigh in favor of granting default judgment.

## C.    Plaintiffs' Requested Relief

Even though the court finds default judgment is not appropriate, the court also outlines some of its concerns regarding the relief Plaintiffs request, since the court expects those concerns to be addressed in any future motion for default judgment.

First, the court is uncertain about the recoverability of the damages Ms. Bride seeks, which the court notes are "100 million dollars." (Bride Decl. ¶ 3.i.)  There is some ambiguity in the TAC about whether this is a wrongful death action, a survival action, or both.  In particular, Ms. Bride seems to be seeking to represent both her son and herself, for example stating that both she and Carson "relied on Yolo's promises," and to recover damages on behalf of her son—for the pain and suffering he experienced—and also on behalf of herself—for the funeral expenses, for the "devastating emotional impact" of "[l]osing [her] 16-year-old child to suicide due to the dangerous and defective designs of the anonymous app.[3]" (Bride Decl. ¶ 3.)  But these issues are not addressed at sufficient level of detail for the court to be able to parse out who is entitled to what damages on whose behalf and on what basis under what claims.

More broadly, there is the issue that Plaintiffs do not submit any evidence regarding the damages they seek except relatively short declarations from Plaintiffs with no attachments (which might substantiate and quantify, for example, Carson's funeral expenses or A.O.'s

---

[3] In addition, the court observes that "dangerous and defective designs" of YOLO are not at issue in this litigation; after the Ninth Circuit appeal, the products liability claims remain dismissed and only misrepresentation claims remain.  (*See also id.* ("[Yolo's] deliberate, dangerous and defective anonymous app designs prioritized quick money over kids' online safety. The life of my beloved son, Carson Bride, was just collateral damage, and this fact makes me physically ill every single day of my life.").)

**CIVIL MINUTES – GENERAL**                    24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                          Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

therapy expenses).  "[A] plaintiff seeking money damages must 'prove-up' the damages" by "provid[ing] admissible evidence (including witness testimony) supporting damage calculations."  *Usens, Inc. v. Chongqing Junma New Energy Auto. Co.*, 2021 WL 3633896, at *1 (N.D. Cal. Aug. 17, 2021).  Plaintiffs are far from clear regarding what precise damages they are seeking.  For example, Casperson's declaration states that she has "been through a lot of emotional distress after the loss of [her] brother in 2020 to suicide and the loss of [her] brother's girlfriend six weeks later to suicide," especially where "[t]he use of the Yolo app was a huge reason to why [her] brother's girlfriend took her own life by suicide" since "[p]eople would anonymously threaten her and tell her to kill herself on the app, and she did."  (Casperson Decl. ¶ 3.b.)  It is not clear whether Casperson is seeking damages for the emotional distress she suffered as a result of her brother's girlfriend's death, or whether those statements merely provide background for why Casperson's emotional distress from the bullying she herself experienced on the app was so serious.  Plaintiffs also provide the court no comparable case or other metric by which to decide what amount of emotional distress damages would be appropriate to award.

Instead of providing this explanation, detail, and evidence, Plaintiffs state: "Because the calculation of these multifaceted damages (including specific statutory penalties and class-wide relief) requires a detailed evidentiary showing, Plaintiffs respectfully request that the Court schedule a damages inquest following the entry of default."  (Mot. at 16.)  The term "inquest" is not one widely used in default judgment caselaw—at least based on the court's search of law in the Ninth Circuit and this District—and Plaintiffs do not describe what such a process would entail.  To the extent Plaintiffs refer to an evidentiary hearing, the court would expect a more fulsome written showing to be presented before an evidentiary hearing commenced; instead, it appears to the court that Plaintiffs used the term "inquest" to cover the fact that they did not yet develop much evidence to present.

In addition, Plaintiffs "seek damages for unjust enrichment, as they conferred a tangible economic benefit upon Yolo by providing their personal data and sacrificing privacy rights under false pretenses," and "Yolo reaped significant profits by selling this sensitive minor user data for advertisements rather than utilizing it to stop the inappropriate conduct it claimed to monitor."  (Mot. at 18.)  It is not clear to the court whether Plaintiffs seek Yolo's profits or compensation for the "tangible economic benefit" they gave Yolo, but the court is not inclined

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                     Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

to award either.  Regarding profits, the court has already explained that Plaintiffs made an insufficient showing that they are entitled to equitable relief.  (MTD Order at 15-18.)  Regarding payment for the "tangible economic benefit" of Plaintiffs' "personal data and sacrific[ed] privacy rights," and "the value of the personal data of users that was lost," the court finds these are inadequately supported by the record.

Next, Plaintiffs seek statutory damages under Oregon, Colorado, Pennsylvania, and Minnesota laws, and argue that "Plaintiffs are also entitled to seek attorneys' fees and equitable relief under each of these laws, and Plaintiffs seek injunctive relief under each respective statute enjoining Yolo from continued violations of these laws."  (Mot. at 21-22.)  Plaintiffs do not explain why these claims are adequately pleaded—something Defendant challenged, though in a way that was too cursory for the court to address at the motion to dismiss stage, (MTD Order at 19)—and the fact that these claims open up recovery of attorney fees makes this issue even further worth addressing, especially in light of the court's concerns regarding whether Plaintiffs have plausibly alleged the challenged statements were promises rather than threats.  *See* Section III.B.2. & 3., *supra*.

The bottom line is this: at this stage of the proceedings, Plaintiffs have presented insufficient legal authority and evidence for the court to find it is appropriate to exercise its discretion to grant the relief Plaintiffs seek.

## IV.    Disposition

For the reasons set forth above, the Motion is **DENIED** insofar as it seeks class certification, and **DENIED WITHOUT PREJUDICE** insofar as it seeks default judgment.  If Plaintiffs wish to continue to seek default judgment against Yolo, they shall file a renewed motion for default judgment on or before **April 16, 2026**.  **Failure to file a renewed motion for default judgment or seek other appropriate relief on or before that date will result in dismissal of Plaintiffs' claims against Yolo for lack of prosecution[4] and the court entering final judgment in favor of Henrion on Plaintiffs' claims against him.**

---

[4] *See* Fed. R. Civ. P. 41(b); *In re Phenylpropanolamine (PPA) Prods. Liab. Litig.*, 460 F.3d 1217, 1227 (9th Cir. 2006) ("Rule 41(b) permits dismissal for failure of the plaintiff to prosecute or to comply with any order of court."); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                          Date: March 16, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

---

(1991) (courts may "act sua sponte to dismiss a suit for failure to prosecute") (cleaned up); *Link v. Wabash R.R.*, 370 U.S. 626, 629 (1962) ("The authority of a federal trial court to dismiss a plaintiff's action with prejudice because of [their] failure to prosecute cannot seriously be doubted."); *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 689 (9th Cir. 2005) ("[C]ourts may dismiss under Rule 41(b) sua sponte, at least under certain circumstances."); *Pagtalunan v. Galaza*, 291 F.3d 639, 640-43 (9th Cir. 2002) (affirming *sua sponte* dismissal with prejudice "for failure to prosecute and for failure to comply with a court order"); *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) ("District courts have inherent power to control their dockets" and "[i]n the exercise of that power they may impose sanctions including, where appropriate, default or dismissal.").

---