UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Present: **HONORABLE FRED W. SLAUGHTER, UNITED STATES DISTRICT JUDGE**

<table>
<tr><td>Rolls Royce Paschal</td><td>N/A</td></tr>
<tr><td>Deputy Clerk</td><td>Court Reporter</td></tr>
</table>

Attorneys Present for Plaintiffs:              Attorneys Present for Defendant:

Not Present                                    Not Present

**PROCEEDINGS:    ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR
CLASS CERTIFICATION [248], DENYING PLAINTIFFS'
RENEWED MOTION FOR DEFAULT JUDGMENT [249], AND
CLOSING CASE**

Before the court are two motions, which are renewed after the court previously denied them, (Dkt. 246 (Order Denying Plaintiffs' Motion for Default Judgment, "Prior Order")): (1) Plaintiff's Renewed Motion to Certify Class, (Dkt. 248 ("Renewed MCC" or "MCC")), and (2) Plaintiffs' Renewed Motion for Default Judgment against Yolo, (Dkt. 249 ("Renewed MDJ or "MDJ").)  Based on the record, as applied to the relevant law, both motions are **DENIED**.[1]

I.     **Background**

A.     **Allegations in the Third Amended Complaint**

Yolo "designed, developed, manufactured, distributed, and delivered" an "anonymous messaging app" called YOLO, which was "widely available primarily to young children as an extension to Snapchat" until former Defendant Snap, Inc. banned the app in 2021.  (Dkt. 200

---

[1] The court finds these matters appropriate for resolution without oral argument.  *See* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."); C.D. Cal. L.R. 7-15 (authorizing courts to "dispense with oral argument on any motion except where an oral hearing is required by statute").  Accordingly, the hearing set for **May 21, 2026**, is **VACATED** and **OFF CALENDAR**.

**CIVIL MINUTES – GENERAL**                                        1

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

(Third Amended Complaint, "TAC") ¶¶ 2-3, 15; *see id.* ¶ 10 (alleging that "[w]ithin 48 hours of filing th[is] lawsuit, Snap suspended YOLO").)  The app "allowed users to ask questions and have users anonymously respond, to send polling requests on a completely anonymous basis, and to chat with other users anonymously." (*Id.* ¶ 48.)  "When Yolo launched YOLO in May 2019, Yolo marketed YOLO to minors and allowed minors to use the YOLO app without verifying or attempting to verify the age of its users." (*Id.* ¶ 51.)  YOLO had a "Teen" content rating on the Google Play store, "intentionally focusing its marketing and solicitation toward teenagers." (*Id.* ¶ 52.)  "[I]n YOLO's first week it became the top downloaded app in America, and 11 months later the app had 10 million active users." (*Id.* ¶ 49.)

Plaintiffs' central allegation in this case is that "Yolo made false and deceptive statements to users when they signed up about the steps Yolo would take to make the app safer." (*Id.* ¶ 54.)  The challenged misrepresentations include:

1. "When a user first open[ed] YOLO after downloading it from the Apple or Google app store, a pop-up notice fill[ed] the screen and t[old] each prospective user: 'YOLO has no tolerance for objectionable content or abusive users.  You'll be banned for any inappropriate usage.'" (*Id.* ¶ 55.)
2. "On the first screen of the user's interface with the YOLO app, YOLO state[d]: 'YOLO is for positive feedback only.  No bullying.  If you send harassing messages to our users, your identity will be revealed.'" (*Id.* ¶ 56.)
3. "YOLO's App Store page also state[d]: 'Be kind, respectful, show compassion with other users, otherwise you will be banned.'" (*Id.* ¶ 57.)

"Contrary to those representations, from the earliest days that YOLO was operational through the time that YOLO was banned by Snap, YOLO routinely did not reveal the identi[t]ies of abusive users, nor did YOLO ban those users, even after abusive users were reported to the app." (*Id.* ¶ 59.)  And "when YOLO users reported other users who were sending bullying or harassing messages, including to YOLO's 'Contact Us' email, YOLO regularly did not respond to their inquiries or take any action in response to them." (*Id.* ¶ 60; *see id.* ¶ 62 (quoting user reviews to this effect).)  Indeed, Yolo "knew or should have known . . . when [the app] reached 10 million daily active users, that it could not possibly provide

**CIVIL MINUTES – GENERAL**                                    2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

meaningful safeguards to so many active users—including the safeguards Yolo told its users
and users' parents it would implement—given that it had fewer than 10 employees." (*Id.* ¶ 50.)

Carson Bride ("Carson") is one teenager who was bullied on YOLO. (*Id.* ¶ 66.) "From
January 23, 2020, to June 22, 2020," during Carson's sophomore year in high school, "Carson
received at least 105 messages via the YOLO app," with 62 of those "messages includ[ing]
content that was meant to humiliate Carson, often involving sexually explicit and disturbing
content." (*Id.* ¶¶ 65, 70-71.) For example, Carson received messages saying, "I'm gonna push
u into the Grand Canyon," "When u passed out in Biology I put my balls in ur mouth," "When
you passed out I ate your ass," "are you a virgin," "I WANT YOUR WEINER NOWWWW,"
"why do you make my peepee so hard," "How big is your penis," and "How big are your balls."
(*Id.* ¶¶ 72-73, 79.) "[O]n June 7, 2020, after receiving numerous abusive, harassing, and
upsetting messages on YOLO, Carson searched YOLO's website and other websites searching
for 'YOLO reveal,' 'YOLO username reveal hacks,' and other keyword searches in an effort to
find out who was sending abusive messages to him." (*Id.* ¶ 74.) "In responding to numerous
abusive messages, Carson asked the anonymous users sending him abusive messages to
voluntarily 'S/U' (Swipe Up) to reveal their identities. None of the users chose to reveal
themselves." (*Id.* ¶ 76.) On June 23, 2020, at the age of 16, "Carson took his own life by
hanging himself at his home." (*Id.* ¶¶ 8, 15, 65.) "[T]he morning of Carson's death, the last
web history found from his phone shows that Carson was again searching 'Reveal YOLO
Username Online,' which reflects his final painstaking attempt to find out who was sending
abusive anonymous messages to him on the YOLO app." (*Id.* ¶ 80.)

Addison Kennedy, Amber Casperson, and A.O. also experienced bullying and
harassment on YOLO while they were minors. (*See id.* ¶¶ 98-121.) Kennedy "received
numerous bullying anonymous messages on YOLO," "includ[ing] statements like '[Kennedy]
does drugs,' which is false; 'I hope you die'; and 'I'm gonna kill you.'" (*Id.* ¶ 100.) "The
anonymous messages that [Kennedy] received on YOLO made her consider whether she should
kill herself and give into what other people were saying about her. It lowered her self-esteem
for years. It altered her eating habits. And it made her feel worthless and like a waste of space
and a life." (*Id.* ¶ 104.) Casperson, after "suffer[ing] the fatal loss of her 16-year-old brother,
who took his own life on January 2, 2020," "posted a story on Snapchat where she was depicted
spending time with her friends. Immediately after that posting, [Casperson] received

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

anonymous messages on YOLO that stated: 'You look happy without your brother – you should go kill yourself too.'" (*Id.* ¶¶ 108-09.)  As to A.O., "[d]uring the pandemic, A.O. posted a question on YOLO: 'What would we do if we could be in the same room?' A.O. received an anonymous message on YOLO: 'We would have sex together.'  A.O. felt disgusted and replied, 'No thanks.'" (*Id.* ¶¶ 117-18.)

Based on these facts, Plaintiffs bring claims for: (1) fraudulent misrepresentation; (2) negligent misrepresentation; (3) unjust enrichment; (4) violation of the Oregon Unlawful Trade Practices Act; (5) violation of New York General Business Law § 349; (6) violation of New York General Business Law § 350; (7) violation of the Colorado Consumer Protection Act; (8) violation of the Pennsylvania Unfair Trade Practices Law; and (9) violation of the Minnesota False Statement in Advertising Act.  (*See id.* ¶¶ 178-238.)

### B.    Procedural History

Plaintiffs filed this case against Yolo and other defendants on May 10, 2021 in the Northern District of California.  (Dkt. 1.)  Judge James Donato transferred the case to this District under 28 U.S.C. Section 1404(a) on August 18, 2021.  (Dkt. 45; *see* Dkt. 53.)  After motions to dismiss were filed in September 2021, (*see* Dkts. 71-77, 79); and after numerous stipulations to extend the hearing on those motions pending settlement discussions, (*see* Dkts. 82, 86, 88, 90, 94, 96, 98, 102, 105), the parties stipulated to Snap, Inc.'s dismissal with prejudice on June 17, 2022, (Dkt. 111), and Plaintiffs filed a First Amended Complaint on June 27, 2022.  (Dkt. 113.)

On January 10, 2023, the court dismissed Plaintiffs' First Amended Complaint on the basis of immunity under Section 230 of the Communications Decency Act.  (Dkt. 142.)  On August 22, 2024, the Ninth Circuit affirmed the court's dismissal of Plaintiffs' products liability claims, leaving Plaintiffs' misrepresentation claims remaining on remand.  (Dkt. 151.)  The mandate issued on September 16, 2024.  (Dkt. 152.)

On October 24, 2024, Plaintiffs filed a Second Amended Complaint.  (Dkt. 160.)  On February 21, 2025, the court granted in part and denied in part Yolo's motion to dismiss the Second Amended Complaint.  (Dkt. 170 ("MTD Order").)  In the MTD Order, the court

**CIVIL MINUTES – GENERAL**                                              **4**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

resolved several issues, including rejecting Yolo's argument that the court lacked CAFA subject matter jurisdiction, determining that the two plaintiffs who were no longer minors should no longer be proceeding under pseudonyms, and finding that Plaintiffs failed to show an organization plaintiff had standing. (*Id.* at 6-10.) The court concluded that Plaintiffs failed to adequately allege an inadequate remedy at law and therefore dismissed Plaintiffs' prayer for restitution and disgorgement of Yolo's revenues and other wrongfully-acquired monies, and a corrective advertising campaign; that Plaintiffs failed to show any likelihood of future harm and therefore dismissed Plaintiffs' prayer for orders enjoining YOLO from future operation or unlawful practices. (*Id.* at 15-18.) The declined to dismiss under Rule 9(b) Plaintiffs' fraudulent misrepresentation claims, and also as not persuaded at that early stage of the proceedings that the First Amendment barred Plaintiffs' claims. (*Id.* at 11-14.) And the court declined to resolve numerous arguments that the parties failed to address in adequate detail, finding those arguments better resolved at a later stage such as class certification or summary judgment. (*Id.* at 18-19.) At the hearing on this motion, the court advised both parties that it did not feel that either side offered the quality of argument, the quality of research, or the attention to detail that this case deserves.

On May 13, 2025, the court denied Yolo's Motion for Judgment on the Pleadings, which was based on Yolo's argument that Plaintiffs' claims were barred by relevant Terms of Service, including that users represented they were 18 years or older or under a parent's supervision, and that New York law applies. (Dkt. 187 ("MJOP Order").) Again, "the court [was] not persuaded that the relief [Yolo sought]—dismissal of all of Plaintiffs' claims—[was] warranted at this time. Simply put, the court finds the matters presented in the Motion are fact-intensive questions better suited for summary judgment." (*Id.* at 7 (citation modified).) The court's reasoning was based at least in part on the fact that "as [Yolo] concede[d], Plaintiffs allege and argue they disaffirm the TOS." (*Id.*)

On July 1, 2025, the court granted the application of Dentons US LLP to withdraw as counsel for Yolo, and also granted Plaintiffs' motion for leave to file a Third Amended Complaint to add Henrion as a defendant. (Dkt. 198.) The court ordered Yolo to obtain replacement counsel by August 15, 2025. (*Id.*) On August 20, 2025, the court issued an Order Extending Time for Yolo to Substitute Counsel Before Striking Answer and Entering Default. (Dkt. 220.) When Yolo failed to substitute counsel by the deadline, the court struck

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Yolo's answer and entered default against Yolo.  (Dkt. 228.)  The Clerk of Court entered default against Yolo based on the court's order on September 23, 2025.  (Dkt. 229.)

On September 29, 2025, the court granted Henrion's Motion to Dismiss, dismissing the Third Amended Complain as against Henrion without leave to amend.  (Dkt. 231 ("Henrion Order").)  Having dismissed Henrion, the court directed Plaintiffs, if they wished to seek default judgment against Yolo, to file a motion for default judgment against Yolo on or before October 30, 2025.  (*Id.* at 9.)

On October 21, 2025, Plaintiffs filed a Notice of Appeal of the Henrion Order. (Dkt. 233.)  The Ninth Circuit assigned a case number and set a briefing schedule.  (Dkt. 234.)

On October 30, 2025, Plaintiffs filed a Motion for Default Judgment against Yolo in which Plaintiffs requested that the question of damages be resolved after resolution of the appeal of the Henrion Order.  (Dkt. 237.)  The court denied without prejudice the Motion for Default Judgment; although the court noted the Henrion Order was not a final judgment and therefore the court believed that the Ninth Circuit lacked jurisdiction over the appeal, "in an abundance of caution and in deference to the Ninth Circuit, the court" ruled that it "will defer making any rulings as to Yolo until the appeal of the Henrion Order is finalized."  (Dkt. 239 at 2.)  The court then stayed the case pending resolution of the Henrion Order appeal.  (Dkt. 240.)

On November 4, 2025, the Ninth Circuit issued an order explaining that "[a] district court's dismissal order is not appealable under 28 U.S.C. § 1291 unless it disposes of all claims as to all parties or unless judgment is entered in compliance with Federal Rule of Civil Procedure 54(b)," and the Ninth Circuit "may therefore lack jurisdiction over this appeal." (Ninth Circuit Case No. 25-6703, Dkt. 5 at 1.)  The Ninth Circuit ordered that Plaintiffs "must either file a motion to voluntarily dismiss this appeal or file a statement explaining why it should not be dismissed."  (*Id.* at 2.)  Plaintiffs voluntarily dismissed the appeal, (Ninth Circuit Dkt. 9), and the mandate issued on January 9, 2026, (Ninth Circuit Dkt. 10; Dkt. 242).

On the same day Plaintiffs voluntarily dismissed the Henrion Order appeal, they filed before this court a Motion for Rule 54(b) Certification of the Henrion Order.  (Dkt. 241.)  The court denied that motion and directed Plaintiffs to file a complete motion for default judgment

---

**CIVIL MINUTES – GENERAL**                                                        **6**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

so that the case against Yolo may be resolved and any Ninth Circuit appeal would involve all claims and parties. (Dkt. 243.)

On March 16, 2026, the court denied Plaintiffs' Motion for Default Judgment, which contained "(1) a motion for class certification; [and (2)] motion for default and damages inquest request for plaintiffs individually and for the class (assuming that the latter would be specified once class certification is granted and a class notice plan is approved)." (Prior Order.) The court describes the Prior Order's reasoning in relevant portions throughout this Order.

The Renewed MCC and Renewed MDJ followed.

## II.    Renewed Motion for Class Certification

Rule 23 "enables a federal court to adjudicate claims of multiple parties at once, instead of in separate suits." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). Under Rule 23(a), a class may be certified if "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). These requirements are respectively referred to as numerosity, commonality, typicality, and adequacy. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997). In addition, as applicable here, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

After default, courts accept as true the well-pleaded factual allegations in the complaint, except those relating to the amount of damages. *See TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987) (per curiam). However, this general principle does not mean that mere allegations in a complaint are sufficient to establish Rule 23's class certification requirements. *Davis v. Hutchins*, 321 F.3d 641, 648-49 (7th Cir. 2003); *Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340 (4th Cir. 2006). ("[A]lthough a default judgment has the effect of deeming all factual allegations in the complaint admitted, it does not also have

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                         Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

the effect of 'admitting' the independent legal question of class certification."). Indeed, Rule 23 "does not set forth a mere pleading standard," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011), and "[c]ompliance with [Rule 23] must be actual, not presumed." *Partington*, 443 F.3d at 340. A party seeking class certification "must prove the facts necessary to carry the burden of establishing that the prerequisites of Rule 23 are satisfied by a preponderance of the evidence." *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Food, LLC*, 31 F. 4th 651, 665 (9th Cir. 2022). And they must do so "regardless of the defendant's admissions." *Partington*, 443 F.3d at 340.

"[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350-51. In other words, a defendant's failure to appear "does not lessen [the plaintiff's] burden to affirmatively show that the Rule 23 requirements are met." *Wang v. Def. Tax Grp. Inc.*, 2020 WL 6204578, at *2 (C.D. Cal. Aug. 10, 2020) (citing *Dukes*, 564 U.S. at 350; *Whitaker v. Bennett Law, PLLC*, 2014 WL 5454398, at *4 (S.D. Cal. Oct. 27, 2014) ("Regardless of Bennett Law's failure to respond and the resulting limitation in Whitaker's evidentiary options, Whitaker was still able to establish a reasonable basis to believe that numerous class members exist.")). This standard serves the important function of "protect[ing] absent class members whose rights could be affected by the certification." *Partington*, 443 F.3d at 340. "Allowing certification by default or because the defendant has admitted that the class exists, with no independent analysis or determination by the district judge, would remove this important protection." *Id.*

In this case, purporting to "[a]ddress[] the concerns raised by this Court in the [Prior Order], Plaintiffs now bring this Renewed Motion for Class Certification," which includes, among other revisions, "a narrowed class definition." (MCC at 3-4.) Plaintiffs now ask the court to certify the following class:

> All persons who were between the ages of 13 and 17, who
> downloaded or used the YOLO application in the United States
> between May 2019 to date, and who were presented at the time of
> downloading or onboarding with YOLO's standardized
> representations concerning anonymity, content moderation, and safety
> as follows: "YOLO has no tolerance for objectionable content or

**CIVIL MINUTES – GENERAL**                                          **8**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

abusive users. You'll be banned for any inappropriate usage." And
"YOLO is for positive feedback only. No bullying. If you send
harassing messages to our users, your identity will be revealed."

(*Id.* at 5.)  The court addresses the Rule 23(a) and (b) requirements in turn.

### A.    Numerosity

The first Rule 23(a) requirement is that the "class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  "No exact numerical cut-off is required; rather, the specific facts of each case must be considered."  *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 634 (C.D. Cal. 2009) (citing *Gen. Tel. Co. of Nw., Inc. v. EEOC.*, 446 U.S. 318, 330 (1980)).  "As a general matter, courts have found that numerosity is satisfied when class size exceeds 40 members."  *Moore v. Ulta Salon, Cosmetics & Fragrance, Inc.*, 311 F.R.D. 590, 602-03 (C.D. Cal. 2015); *see also Tait v. BSH Home Appliances Corp.,* 289 F.R.D. 466, 473-74 (C.D. Cal. 2012).  A plaintiff need not "establish the precise number of class members," *In re China Intelligent Lighting & Elecs., Inc. Sec. Litig.*, 2013 WL 5789237, at *3 (C.D. Cal. Oct. 25, 2013), but he "must be prepared to prove that there are *in fact* sufficiently numerous parties," *see Dukes*, 564 U.S. at 350.

In the Prior Order, the court found it reasonable to infer, based on Plaintiffs' allegations that there were 10 million daily users and 26 million downloads of the YOLO app, that there are at least 40 class members.  (Prior Order at 10.)  However, the court expressed concern that Plaintiffs' reliance on inferences "seem[ed] to ignore their burden to show that the class certification requirements are actually, not presumably met, by a preponderance of the evidence and regardless of the defendant's admissions."  (*Id.*)

In the Renewed MCC, Plaintiffs submit a declaration from Maddie Freeman, "a Gen-Z leader from Denver, Colorado." (Dkt. 248-3 ¶ 3.)  Ms. Freeman declares, "I would say likely at least 30-40% of my peers that I knew at the time of my use of YOLO had actively used the platform," and "100% of my peers using Snapchat at the time had come across YOLO and seen it used on people's Snapchat stories." (*Id.* ¶ 7.)  Plaintiffs argue this "declaration provides competent, first-hand evidence that YOLO was used by large numbers of teenagers during the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

class period." (MCC at 7.) Plaintiffs also submit news segments reporting that soon after YOLO's release, the app quickly became "the number one most popular app in app stores Google and Apple," that it "gain[ed] millions of users in a matter of weeks," and that by April 2020, it had "10 million active users." (*Id.* at 8-9.) "Thes press coverage is offered to show contemporaneous public recognition of YOLO's scale, teen-focused audience, and widespread adoption during the class period." (*Id.* at 09.)

The court finds Plaintiffs have adequately demonstrated numerosity.

**B.     Typicality and Adequacy**

Contrary to Plaintiffs' assertion that their "revised theory easily establishe[s] typicality," (MCC at 11 (heading)), the court finds Plaintiffs have not carried the burden to show that they are typical or adequate class representatives. The purpose of Rule 23's typicality and adequacy requirements is to ensure that the plaintiff's interests align with the class's interests. *Wiley v. American Financial Network, Inc.*, 2023 WL 4681538, at *2 (C.D. Cal. July 3, 2023) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 611 (1997) (explaining that "both [requirements] look to the potential for conflicts in the class")). Plaintiffs maintain that the typicality requirement is satisfied because "[u]nder the revised class definition and exposure-based liability theory, the gravamen of each class member's claim is the same: all class members were exposed to uniform onboarding representations regarding anonymity, content moderation, and safety, and all relied on those representations by downloading, using, or continuing to use the app." (MCC at 11-12.) The court is not persuaded.

First, contrary to Plaintiffs' belief, under the revised class definition—which encompasses, in summary, minor teen users who downloaded YOLO during certain dates and "were presented" with certain statements, (MCC at 5)—Plaintiffs still seek to represent not only people who were bullied on YOLO, but also at least two other non-alike groups: people who used the app and were not bullied, or who did not suffer so extremely; and the bullies themselves. (*See id.* at 15 (arguing the court's concern about the class including bullies "is not present here").) Plaintiffs argue typicality is present because "class liability [] depends on exposure to a uniform misrepresentation presented to every user at onboarding." (*Id.* at 12.)

---

**CIVIL MINUTES – GENERAL**                                              **10**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

But this argument misses the point; although the alleged misrepresentations may have been uniform, not all people who "were presented" with the alleged misrepresentations in this case were non-bullies and/or people who were bullied on YOLO.  The new class definition still includes people who were not bullied and the bullies themselves, and Plaintiffs are not typical of these groups or adequate to represent them.  That is sufficient basis alone to find that Plaintiffs have not made an adequate showing on these factors.  That alone is sufficient basis to deny the Renewed Motion for Class Certification.

Second, Plaintiffs still have not assuaged the court's concerns regarding Ms. Bride's unique situation.  Typicality and adequacy are not met, and class certification is not appropriate, when there are issues and defenses unique to the named plaintiff's circumstances that could "preoccup[y]" the named plaintiff and "skew the focus of the litigation." *Alaska v. Suburban Propane Gas Corp.*, 123 F.3d 1317, 1321 (9th Cir. 1997); *see Hanon*, 976 F.2d at 508 ("A named plaintiff's motion for class certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it" or when issues or defenses unique to the named plaintiff "threaten to become the focus of the litigation") (cleaned up).  In the Renewed MCC, Plaintiffs clarify as follows:

> Ms. Bride appears in this action in two distinct capacities.  First, she serves as the executor and legal representative of the Estate of Carson Bride, a minor who falls squarely within the class definition and whose claims arise from exposure to YOLO's uniform onboarding representations.  In that capacity, Ms. Bride is an appropriate class representative for the Estate of Carson Bride.
>
> Second, to the extent Kristin Bride asserts any claims or factual allegations arising from her own conduct as a parent—such as discovering YOLO, interacting with reporting mechanisms, or experiencing derivative harms—those claims are not asserted on behalf of the class.  They do not define class liability and will be addressed, if at all, separately from the exposure-based claims asserted on behalf of Carson Bride and absent class members. Class liability turns exclusively on minor users' uniform exposure to

**CIVIL MINUTES – GENERAL**                                                  **11**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                              Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Defendant's alleged misrepresentations at onboarding, not on actions
taken by parents or guardians after use began.

(MCC at 14-15.)  There are several issues with this response.  First, the phrase "to the extent" is telling—it has never been made clear that Ms. Bride asserts her own wrongful death claim separate from the class's misrepresentation claims, and indeed no such claim appears in the TAC.  (*See generally* TAC.)  Second, even if Ms. Bride does have such a claim, Plaintiffs have never suggested bifurcation or any other method of "address[ing]" the claim "separately from" the class's claims.  (MCC at 14-15.)

Even setting aside those issues, this response only further underscores the court's concerns about Ms. Bride's typicality and adequacy to represent the class.  Ms. Bride's declaration details damages she seeks that seem to directly correspond to a wrongful death claim she believes she has—$121,300 for "funeral and burial expenses, as well as expenses for repairing part of [her] home which bears painful reminders Carson's taking his own life in the garage"; "pecuniary loss from being deprived of Carson" including "loss of services, earnings, society, comfort, and protection"; $118,000 per year for 6 past years and 15 future years for lost income due to being unable "to return to [her] career as a strategic planning consultant because the grief simply does not leave"; $22,100 per year for 6 past years and 15 future years for grief counseling; $825,000 in cancer "treatment which [she] believe[s] could have been avoided if [she] had properly been diagnosed and treated in 2020," but she was not because "[w]hen Carson's death happened, [she] could not stand the demands of a medical MRI because [her] body was constantly shaking with the shock [she] endured."  (Dkt. 248-8 ("Supp. Bride Decl.") ¶ 3.)  As it relates to typicality and adequacy, the court is concerned is that Ms. Bride would be so preoccupied with a wrongful death claim that she believes she (and she alone) has and its significant associated damages that she would give short shrift to her role, or be distracted in her role, as class representative on the class's claims for misrepresentation and violation of state consumer protection statutes.  *See Alaska*, 123 F.3d at 1321; *Hanon*, 976 F.2d at 508.  Plaintiffs' attempt to distance these issues as damages issues rather than typicality issues fails—the point is that the inquiries into Ms. Bride's unique situation would exist and distract.  (*See* MCC at 12 ("The Court's concern that the harms alleged are uniquely applicable to Ms. Bride, such as causation of Carson's tragic death, do not define the class claims of liability.  Ms. Bride's narrative supports Plaintiffs' theory of damages, not class wide liability.  Hence, this

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                     Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

should not pose a barrier to establishing typicality for class certification purposes.")); *Alaska*, 123 F.3d at 1321; *Hanon*, 976 F.2d at 508.

For reasons including those described in the Prior Order and here, the court finds Plaintiffs have not sufficiently demonstrated typicality and adequacy.[2]

### C.    Commonality and Predominance

Nor have Plaintiffs sufficiently demonstrated that common questions predominate over individualized issues.  Rule 23(a)(2) requires "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A common question is "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  "By contrast, an individual question is one where members of a proposed class will need to present evidence that varies from member to member."  *Olean*, 31 F. 4th at 663 (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016)).  For commonality, "the key inquiry is not whether the plaintiffs have raised common questions, 'even in droves,' but rather, whether class treatment will 'generate common *answers* apt to drive the resolution of the litigation.'"  *Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 958 (9th Cir. 2013) (quoting *Dukes*, 564 U.S. at 350).  The analysis "does not turn on the number of common questions, but on their relevance to the factual and legal issues at the core of the purported class' claims."  *Jimenez v. Allstate Inc. Co.*, 765 F.3d 1161, 1165 (9th Cir. 2014).  Even a "'single *significant* question of law or fact'" is sufficient.  *Abdullah*, 731 F.3d at 957 (quoting *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012)).

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members."  Fed. R. Civ. P. 23(b)(3).  "Rule 23(b)(3)'s predominance inquiry 'is far more demanding' than Rule 23(a)'s commonality requirement."  *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1008 (9th Cir. 2018) (quoting *Amchem Prods.*, 521 U.S. at 623-24).  "The predominance inquiry asks whether the common,

---

[2] For the reasons described in the Prior Order, the court still has concerns regarding the adequacy of Plaintiffs' counsel to represent this class of millions.  But because that concern is not dispositive, the court does not reiterate it here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                     Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577 U.S. at 453 (citation modified). "The main concern . . . is the balance between individual and common issues." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545-46 (9th Cir. 2013) (citation and internal quotation marks omitted).  Each element of a claim need not be susceptible to class-wide proof, *Amgen*, 568 U.S. at 468-69, and the "important questions apt to drive the resolution of the litigation are given more weight in the predominance analysis over individualized questions which are of considerably less significance to the claims of the class," *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016).  "When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods*, 577 U.S. at 453-54 (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-24 (3d ed. 2005)).

"In order for the plaintiffs to carry their burden of proving that a common question predominates, they must show that the common question relates to a central issue in the plaintiffs' claim." *Olean*, 31 F. 4th at 665 (citing *Dukes*, 564 U.S. at 349-50).  "Considering whether 'questions of law or fact common to class members predominate' begins . . . with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011) (quoting Fed. R. Civ. P. 23(b)(3)).  Here, Plaintiffs' primary cause of action is fraudulent misrepresentation, the elements of which are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damages." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 990 (2004) (citing *Lazar v. Superior Ct.*, 12 Cal. 4th 631, 638 (1996)).

Here, even if there are some common questions, for example whether it was a misrepresentation that Yolo would ban or reveal the identity of those engaging in bullying or harassing behavior, (*see* MCC at 18), any common questions do not predominate; rather, "the balance between individual and common issues" tips in favor of individual issues. *Wang*, 737 F.3d at 545-46.  This is evident from the nature of the statements themselves.  Plaintiffs allege Yolo made misrepresentations including, "No bullying.  If you send harassing messages to our

**CIVIL MINUTES – GENERAL**                                                  **14**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

users, your identity will be revealed," (TAC ¶ 55), and "YOLO has no tolerance for objectionable content or abusive users.  You'll be banned for any inappropriate usage," (*id.* ¶ 56).  But for these statements to be false, a trier of fact would have to consider a host of questions regarding each individual situation: what is "bullying"?  What are "harassing messages," "objectionable content," and "inappropriate usage"?  Who are "abusive users"?  How severe or frequent does a user's conduct have to be for Yolo to be required to take action?  These individualized issues go to the heart of Plaintiffs' misrepresentation claims.

Consider also the element of justifiable reliance, which is rife with individualized issues.  *See Colman v. Theranos, Inc.*, 325 F.R.D. 629, 641 (N.D. Cal. 2018) ("Plaintiffs' Reliance-Based Claims Are Overwhelmed by Individualized Factual Issues" (heading)).  Plaintiffs argue that "[w]here there is undisputed evidence of classwide exposure to a challenged representation, a plaintiff is entitled to the inference that reliance can be shown via common proof."  (MCC at 12 (internal quotations omitted).)  But Plaintiffs' argument relies on false advertising claims[3] where "courts sometimes infer that consumers were exposed to (and relied on) a business's misrepresentations based on the large scale and widespread nature of the advertising."  *Colman*, 325 F.R.D. at 642.  Here, Yolo's alleged misrepresentations are different in kind: unlike statements like "this moisturizer is oil-free," or "this supplement promotes healthy joints in dogs," Yolo's alleged misrepresentations add a critical predicate clause—one that indicates the representation will be true only in certain circumstances.  In other words, "we will ban you" or "we will reveal your identity" might be sufficiently analogous to "this moisturizer is oil-free"; what sets this case apart from a case where a reliance inference might be appropriate is the portion of Yolo's representations that tells users *when* (and only when) Yolo's promises will be true.  Those clauses—such as "if you send harassing messages"; "for any inappropriate usage"; and if you are not "kind, respectful" or do not "show compassion with other users"—involve individualized issues that make the reliance inference Plaintiffs seek inappropriate.

---

[3] *Noohi v. Johnson & Johnson Consumer Inc.*, the first case Plaintiffs cite, (*id.*), involved allegations that "despite the name, Neutrogena Oil-Free Face Moisturizer for Sensitive Skin contains oils and oil-based ingredients."  146 F.4th 854, 860 (9th Cir. 2025), *cert. denied*, 2026 WL 1052179 (U.S. Apr. 20, 2026).  *Lytle v. Nutramax Lab'ys, Inc.*, the second case Plaintiffs cite, (MCC at 12), involved allegations of wrongdoing "by marketing Cosequin as promoting healthy joints in dogs, when in fact Cosequin provided no such health benefits."  114 F.4th 1011, 1019 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 1308 (2025).

**CIVIL MINUTES – GENERAL**                                        **15**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                          Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Relatedly and even more critically, as already explained, Plaintiffs seek to represent a class of people that includes—unlike Plaintiffs—(1) people who were not bullied and (2) the bullies themselves.  It is therefore not true, as Plaintiffs maintain, that Yolo's misrepresentations "generated a reliance that was common to the class."  (MCC at 21.)  Under these circumstances, presuming reliance on a classwide basis does not make sense.  Instead, the issue of reliance turns on individualized issues regarding whether an individual actually or justifiably relied on those misrepresentations.  *See Colman*, 325 F.R.D. at 646 (concluding that "[p]roving reliance is [] something that Plaintiffs will have to do for each class member, and this highly individualized inquiry predominates over issues common to the class" where it was "possible that most or even all members of the proposed class were exposed to and relied on the allegedly fraudulent Theranos story," but it was "also possible that many of the 200+ proposed class members invested for reasons unrelated to Defendants' alleged misrepresentations"); *Painters & Allied Trades Dist. Council 82 Health Care Fund v. Takeda Pharm. Co. Ltd.*, 674 F. Supp. 3d 799, 835-36 (C.D. Cal. 2023), *aff'd,* 2025 WL 1683472 (9th Cir. June 16, 2025) (observing that "if the issue of materiality or reliance is a matter that would vary from consumer to consumer, the issue is not subject to common proof, and the action is properly not certified as a class action" and finding that reliance was an individualized issue in that case) (internal quotation omitted).  For example, among other possibilities, even some putative class members who did face bullying may not have relied on the representations as promises to protect them because they were skeptical a social media company would or could do so.  People who were not bullied or harassed on the app may not have relied on the alleged misrepresentations because they were never worried about bullying or harassing behavior from others.  And people who bullied and harassed on the app are unlikely to have relied on the alleged misrepresentations—or indeed, may even have relied on them being untrue (or puffery).

In sum, even if commonality is met, predominance is not.

**D.    Superiority**

Factors relevant to predominance and superiority include:

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                   Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

(A) the class members' interests in individually controlling the
prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy
already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of
the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  Plaintiffs maintain that a class action is superior here because "individual actions are not a realistic alternative," "uniform conduct makes centralized adjudication superior," the court's emotional-stake concern does not defeat superiority," and manageability favors class treatment, especially after default."  (MCC at 24-25 (headings).) The court is not persuaded.

Factor (A) "weighs against class certification where each class member has suffered sizeable damages or has an emotional stake in the litigation."  *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 444 (E.D. Cal. 2013).  This case concerns minor children who allege they were bullied or harassed by anonymous YOLO users; many of those people will likely have "an emotional stake in the litigation." *See id.*  In addition, A.O. is seeking $37,000, (Dkt. 248-5 ¶ 3.e.); Ms. Kennedy is seeking $81,900, (Dkt. 248-6 ¶ 3.j.); Ms. Casperson is seeking $105,980; and Ms. Bride is seeking in the neighborhood of tens of millions of dollars, (*see* Supp. Bride Decl. ¶¶ 3-5).  Especially given the individualized issues regarding whether a particular bad-actor-class-member's actions can be described as bullying or harassment, the court is not sufficiently certain this is the sort of case where individual "claims would not only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs" to find that a class action is the superior way of resolving the allegations presented in this case.  *Hanon*, 976 F.2d at 508; *see Barbosa*, 297 F.R.D. at 444 ("In this case, where monetary damages that each Class Member suffered individually are relatively modest, certifying a class action is favored."); *Estakhrian v. Obenstine*, 2016 WL 6517052, at *7 (C.D. Cal. Feb. 16, 2016) ("Here, plaintiffs do not assert claims for emotional distress, nor is there any indication that the amount of damages any individual class member could recover is significant or substantially greater than the potential recovery of any other class member."); *Munoz v. PHH Corp.*, 2013 WL 2146925, at *26 (E.D. Cal. May 15, 2013), *report and recommendation adopted,* 2015 WL

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                          Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

3703972 (E.D. Cal. June 11, 2015) (finding superiority met where, among other considerations, "there is no evidence that Class members have any interest in controlling prosecution of their claims separately nor would they likely have the resources to do so" and "[a]lthough the potential recovery is not insubstantial, given the costs of litigation and the superior resources and sophistication of the Defendants, no individual plaintiff is likely to have the means or incentive to pursue this litigation on his or her own"). Furthermore, it seems to the court that the very personalized nature of these claims could make class members have interest in individually controlling the prosecution of separate actions. *See* Fed. R. Civ. P. 23(b)(3)(A). The court finds factor (A) weighs against a finding of superiority.

Factor (B) weighs in favor of class treatment given that the litigation is nearly over.

The court does not have any specific information regarding factor (C) and finds it neutral.

Factor (D) weighs against a finding of superiority. Plaintiffs focus on Yolo's "uniform conduct" to argue that "[a]djudicating th[e] issue [of whether Yolo's representations were false or misleading] in a single proceeding avoids inconsistent rulings, conserves judicial resources, and ensures equal treatment of similarly situated users." (MCC at 24.) But as explained, even if that issue is decided, the court finds there would be numerous difficulties managing a class action here. Given that Plaintiffs allege the misrepresentations occurred at the point of downloading and first using YOLO, and Plaintiffs allege there were 10 million daily users and more than 26 million total users, there are possibly millions of class members in this case. Ascertaining who those class members are and then protecting all of their interests in this case involving bullying, harassment, and emotional distress, would be extremely difficult. The fact that class members would be located across the country would also make managing a trial difficult.

In this vein, the court would be remiss if it did not reassert a concern it raised in the Prior Order: Plaintiffs continue to appear to seek to bind on a judgment entered by default a class that may include millions of people. (*See* Prior Order at 10; MCC at 7-8.) The Rule 23 "analysis is designed to protect absent class members whose rights could be affected by the certification." *Partington*, 443 F.3d at 340. Here, those rights are significant—Plaintiffs' allegations involve the bullying of children leading to teens taking their own lives. Under any circumstances, the

---

**CIVIL MINUTES – GENERAL**                                                              18

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                     Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

court is called upon to examine the evidence to ensure it "is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied," *Dukes*, 564 U.S. at 350-51, but that function is all the more important in a case with such serious allegations involving minors and when Plaintiffs indicate millions of people could be bound by the court's decision.[4]

> **E.    Class Certification Summary**

In summary, the court finds that Plaintiffs have failed to demonstrate that class certification is appropriate in this case. Ultimately, the court finds Plaintiffs fail to make an adequate showing regarding typicality, adequacy, predominance, and superiority. And only one of those findings needs to be correct for the court's ultimate conclusion to be sound; in other words, because Plaintiffs must show *each* of the Rule 23(a) and (b)(3) requirements by a preponderance of the evidence, an insufficient showing as to just one of those considerations makes certification inappropriate. The Motion for Class Certification is therefore **DENIED**.

**III.    Renewed Motion for Default Judgment**

The court therefore turns to whether it is appropriate to grant Plaintiffs' renewed motion for default judgment, which Plaintiffs represent contains "a more complete and disciplined showing." (MDJ at 5.) The court examines (A) whether Plaintiffs meet the procedural requirements for default judgment, and (B) whether Plaintiffs meet the substantive requirements for default judgment.[5]

---

[4] Plaintiffs' response that they "take that concern seriously, and maintain that the issue is adequately addressed through "[t]he revised class definition," which, according to Plaintiffs, "narrows the proposed class to a discrete, historically bounded group," (MCC at 11), is unpersuasive for reasons already described.

[5] Before entering default judgment against a non-appearing party, district courts have an affirmative duty to consider subject matter jurisdiction and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("To avoid entering a default judgment that can later be successfully attacked as void, a court should determine whether it has the power, i.e., the jurisdiction, to enter the judgment in the first place."). Because of the unique procedural posture of this case, the court has already evaluated and confirmed its subject matter

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

### A.    Procedural Requirements

A party seeking default judgment must satisfy the procedural requirements of the Federal Rules of Civil Procedure and the Central District of California's Local Rules. *Harman Int'l Indus., Inc. v. Pro Sound Gear, Inc.*, 2018 WL 1989518, at *1 (C.D. Cal. Apr. 24, 2018). Under Federal Rule of Civil Procedure 55(b), a party may only seek default judgment from the court following an entry of default by the Clerk of Court. Fed. R. Civ. P. 55(b). The party also must comply with Local Rule 55-1 by submitting a declaration alongside the motion for default judgment that includes the following information:

> (1) when and against what party the default was entered; (2) the
> identification of the pleading to which default was entered;
> (3) whether the defaulting party is an infant or incompetent person,
> and if so, whether that person is represented by a guardian, committee,
> conservator, or other representative; (4) that the Servicemembers Civil
> Relief Act (50 U.S.C. App. § 521) does not apply; and (5) that notice
> has been served on the defaulting party, if required by F.R.Civ.P.
> 55(b)(2).

L.R. 55-1. Plaintiffs have met most of these requirements. Pursuant to the court's Order Striking Answer and Entering Default Against Yolo, (Dkt. 228), the Clerk of Court entered default against Yolo on September 23, 2025. (Dkt. 229; Dkt. 249-2 (Declaration of Joyoun Han, "Han Decl.")) ¶¶ 10-11.) Yolo is not an infant, incompetent person, or person protected by the Servicemembers Civil Relief Act. (Han Decl. ¶¶ 19-20.)

In the Prior Order, the court noted that "the court f[ound] no indication that notice of the Motion has been served on Yolo," citing Federal Rule of Civil Procedure 55(b)(2), which provides that "[i]f the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 7 days before the hearing." (Prior Order at 18.) Plaintiffs' approach with

jurisdiction, (*see* MTD Order at 6-7), and personal jurisdiction over Yolo, who appeared and defended this action for years, is not in question.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

the Renewed MDJ was to not give Yolo notice of the Renewed MDJ at the time of filing, but rather to wait until closer to 7 days before the hearing.  (Han Decl. ¶ 16 ("At least 7 days before the hearing date, Plaintiffs' counsel will serve this notice of the Motion including the Memorandum of Law and Exhibits pursuant to Federal Rule of Civil Procedure 55(b)(2) . . . by email at greg@onyolo.com and email a copy to prior counsel of record, Nick S. Pujji and John A. Moe, II at Dentons US LLP.").)  It is difficult for the court to understand what appears to be a calculated decision to give Yolo and its prior representative as little time with the Renewed Motion for Default Judgment as necessary.  "Aside from making the practice of the profession unnecessarily miserable, animosity is often the enemy of efficiency in litigation.  The system— and perhaps the client—demands attorneys be adversarial advocates.  But . . . [f]or good lawyers, civility doesn't come at the expense of advocacy.  Civility is advocacy." *State Comp. Ins. Fund v. Drobot*, 2016 WL 6661338, at *2 (C.D. Cal. Aug. 10, 2016).  In the end, because the court finds granting the Renewed MDJ inappropriate on other grounds, the court makes no express finding on this issue, and the court will consider the Motion as if Plaintiffs complied with the procedural requirements.

> **B.      Substantive Requirements (*Eitel* Factors)**

When a party seeking default judgment meets the procedural requirements, courts consider the factors the Ninth Circuit set forth in *Eitel v. McCool*, 782 F.2d 1470 (9th Cir. 1986), to determine whether to grant the requested default judgment, including:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id.* at 1471-72.  "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                          Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Here, even if Plaintiffs eventually comply with all procedural requirements, the court still finds that, on balance, the *Eitel* factors weigh against granting default judgment.

### 1.      Possibility of Prejudice to Plaintiffs

The first *Eitel* factor "considers whether the plaintiff will suffer prejudice if default judgment is not entered." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Although Yolo appeared and vigorously defended this action for years, its counsel ultimately withdrew amidst nonpayment of fees and the specter of bankruptcy, and default was entered when Yolo failed to substitute any new counsel even after the court extended the deadline to do so. (*See* Dkt. 198 (Order Granting Motion to Withdraw); Dkt. 220 (Order Extending Time for Yolo to Substitute Counsel); Dkt. 228 (Order Striking Answer and Entering Default).) If default judgment is not entered, Plaintiffs will "likely be without other recourse for recovery." *PepsiCo*, 238 F. Supp. 2d at 1177; *see Seiko Epson Corp. v. Prinko Image Co. (USA)*, 2018 WL 6264988, at *2 (C.D. Cal. Aug. 22, 2018) ("Given Defendant's unwillingness to answer and defend, denying default judgment would render Plaintiffs without recourse."); *Amini Innovation Corp. v. KTY Intern. Mktg.*, 768 F. Supp. 2d 1049, 1054 (C.D. Cal. 2011) ("As the Defendant has not appeared in this action, a default judgment is the only means available for compensating Plaintiff."). Therefore, the court finds the first *Eitel* factor weighs in favor of granting default judgment.

### 2 & 3.  The Merits of Plaintiffs' Substantive Claims and the Sufficiency of the Complaint

Even when default is entered, courts must still determine whether the facts alleged give rise a cognizable cause of action because "claims [that] are legally insufficient . . . are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). The second and third *Eitel* factors address the substantive merits of a plaintiff's claims and the sufficiency of the complaint, and "require that a plaintiff state a claim on which [the plaintiff] may recover." *Philip Morris USA, Inc. v. Castworld Prod., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003); *Eitel*, 782 F.2d at 1471; *see also Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978) (explaining "the issue [as to the second and third factors] is whether the allegations in the complaint are sufficient to state a claim"); *Dr. JKL Ltd. v. HPC IT Educ. Ctr.*, 749 F. Supp. 2d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

1038, 1048 (N.D. Cal. 2010) ("Under an *Eitel* analysis, the merits of plaintiff's substantive claims and the sufficiency of the complaint are often analyzed together.").

Plaintiffs argue that the procedural posture of this case establishes that *Eitel* factors 2 and 3 weigh in favor of granting default judgment. (*See* MDJ at 10 ("These claims survived extensive motion practice, a Ninth Circuit appeal, and remand. . . . This Court has already determined, after full adversarial briefing, that Plaintiffs pleaded fraudulent and negligent misrepresentation with particularity as to every required element."). However, the court is not persuaded that the court's MTD Order—which addressed only the arguments the parties made at the time, on briefing the court made clear in its remarks at the hearing was less than impressive, at an earlier stage of the case—precludes the court from finding at this stage that *Eitel* factors 2 and 3 do not weigh in favor of granting default judgment. *See, e.g.*, Fed. R. Civ. P. 54(b) ("[A]ny order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities."). Accordingly, the court proceeds to analyze these factors.

Plaintiffs seek default judgment on their claims for (1) fraudulent and negligent misrepresentation, and (2) violation of state consumer protection statutes. (MDJ at 7-8.) The court addresses *Eitel* factors 2 and 3 as to these claims in turn.

### a.    Misrepresentation

To reiterate, Yolo's statements that Plaintiffs challenge in this case as misrepresentations are as follows:

- "YOLO is for positive feedback only. No bullying. If you send harassing messages to our users, your identity will be revealed."
- "YOLO has no tolerance for objectionable content or abusive users. You'll be banned for any inappropriate usage."
- "Be kind, respectful, show compassion with other users, otherwise you will be banned."

---

**CIVIL MINUTES – GENERAL**                                                    **23**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

(TAC ¶¶ 55-57.)  And as noted, the elements of a fraudulent misrepresentation are: "(1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (or scienter); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damages."  *Robinson Helicopter*, 34 Cal. 4th at 990.  "The elements of negligent misrepresentation are" very similar: "(1) a misrepresentation of a past or existing material fact, (2) made without reasonable ground for believing it to be true, (3) made with the intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting damage."  *Ragland v. U.S. Bank Nat'l Assn.*, 209 Cal. App. 4th 182, 196 (2012).

### i.        Misrepresentation of Fact

Plaintiffs' theory in this case is that Yolo's statements that bullies' identities would be revealed and be banned were false.  In the Prior Order, the court expressed its "view [that] there is a serious question regarding whether the statements challenged as misrepresentations are puffery," (Prior Order at 20), rather than actionable misrepresentations, which are statements that convey a "specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact."  *Coastal Abstract Serv. v. First Am. Title Ins. Co.*, 173 F.3d 725, 731 (9th Cir. 1999).

In the Renewed MDJ, Plaintiffs argue Yolo's statements are actionable because they "are phrased as concrete commitments tied to specific enforcement actions ('your identity will be revealed,' 'you'll be banned'), not generalized aspirational slogans."  (MDJ at 10.)  Plaintiffs continue:

> District courts addressing similar platform representations likewise distinguish between nonactionable challenges to editorial judgment and actionable statements of fact about how a platform actually reviews or removes reported content.  In *Bogard v. TikTok Inc.*, the court held that plausibly alleging that a platform represented it does review and remove reported content, and then failed to do so, states an actionable misrepresentation claim because such statements are

**CIVIL MINUTES – GENERAL**                                        24

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                              Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

susceptible of being true or false and are not merely abstract promises of future conduct. 2025 WL 604972, at *15–16 (N.D. Cal. Feb. 24, 2025).  Here, as in [the Ninth Circuit's decision in] *Estate of Bride* and *Bogard*, Plaintiffs' claims rest on YOLO's affirmative safety representations made to induce teen users and their parents to adopt and continue using the product, not on any attempt to impose a generalized duty to remove third-party content or to second-guess protected editorial judgment.

(MDJ at 11.)

Describing *Bogard* in detail illuminates why Plaintiffs' argument does not hold up. *Bogard* involved claims against YouTube and TikTok brought by parents of children who died participating in "choking challenges" after viewing videos regarding the challenges on YouTube, and parents of children who were bullied and harassed in a video promoted on TikTok.  2025 WL 604972, at *1.  The *Bogard* plaintiffs brought, among others, claims for fraudulent misrepresentation and negligent misrepresentation, arguing YouTube and TikTok misrepresented that they (1) "review and act upon harms that violate their policies (2) in a way that is meaningful and accurate enough to respond to a majority of harms, (3) such that their platforms will be free of certain content."  *Id.* at *11 (internal quotations omitted).[6]  In other

---

[6] This is a summary of the alleged misrepresentations in *Bogard*, which were, in full:

> (1) **YouTube Policies**: "YouTube doesn't allow content that encourages dangerous or illegal activities that risk serious physical harm or death. If you find content that violates this policy, report it. Instructions for reporting violations of our Community Guidelines are available here. When content is reported, it's not automatically taken down. Reported content is reviewed along these guidelines: Content that violates our Community Guidelines is removed from YouTube."
> (2) **YouTube Guidelines**: We enforce these Community Guidelines using a combination of human reviewers and machine learning, and apply them to everyone equally—regardless of the subject or the creator's background, political viewpoint, position, or affiliation.

---

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

words, the *Bogard* plaintiffs argued that YouTube and TikTok's "statements [were] false because the reporting processes did not, in Plaintiffs' experience, result in the removal of content that violated Defendants' policies or guidelines." *Id.*

The *Bogard* court divided the alleged misrepresentations into two categories: statements regarding what is "not allowed" on the platforms and statements that "we remove" content not

(3) **YouTube Policies**: The following types of content are not allowed on YouTube. This isn't a complete list. Asphyxiation: Any activity that prevents breathing or can lead to suffocation like: Choking, drowning, or hanging games." . . .

(4) **TikTok Guidelines:** We don't allow: Content that shows or suggests inappropriate use of dangerous tools or objects. Content that shows dangerous driving behavior. Content that shows or promotes ingesting substances that are not meant for consumption and could lead to severe harm. Content that describes or provides instructions on how to perform a dangerous activity. Dangerous games, dares, challenges or stunts that might lead to injury or property damage.

(5) **TikTok Statement at Senate Hearing:** Senator we have not been able to find any evidence of a black out challenge on TikTok at all. And again it would violate our guidelines but it's something that we would proactively search [for] both with AI and Human Moderators. We have found absolutely no evidence of it.

(6) **TikTok's self-created public campaign and content, "#safertogether" in November 2021:** TikTok claims in their "Learn How Reporting Works" video that "every report that is sent to TikTok is checked."

(7) **TikTok's statement in the Safety Page:** We remove content that features dangerous, harmful or criminal behaviors. We will also remove videos that discuss dangerous challenges if they contain unfounded warnings which seek to spread fear and panic, or include instructions or depictions of harmful behavior. If you're not sure whether a video is potentially harmful, report it to us and we'll take a look.

**CIVIL MINUTES – GENERAL**                    **26**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                      Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

allowed.  *See id.*  As to the first category, the *Bogard* court agreed with YouTube and TikTok "that Plaintiffs largely fail to plead what is false about each challenged statement or why each is false" because "it is difficult to imagine how" "statements of policy" that "simply describe what content is allowed on the platforms" "could be considered 'false' for purposes of Plaintiffs' claims."  *Id.*  As to the second category—which "present[ed] a closer question"—the court found that "to the extent determination of whether a video violates a policy or guideline or contains specific prohibited content requires a subjective determination that must be made by Defendants, even these affirmative 'we remove' statements may not be susceptible of being 'true' or 'false.'"  *Id.* (citing *Humphrey v. J.M. Smucker Co.*, 2023 WL 3592093, at *7 (N.D. Cal. May 22, 2023) ("A representation of fact is one which makes a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.") (internal citations and quotations omitted)).  The court continued,

> Plaintiffs appear to concede as much in framing the alleged misrepresentations as statements that Defendants will review and act upon reports in a way that is "meaningful" and "accurate enough to respond to a majority of harms."  It is difficult to imagine standards more subjective than "meaningful" and "accurate enough."  *See Dena' Nena' Henash, Inc. v. Oracle Corp.*, 2007 WL 1455905, at *6 (N.D. Cal. May 16, 2007) ("The concept of 'almost complete' is too vague to support a claim of fraud, and it is not clear that the statement was knowingly false when made.  Plaintiff's allegation that there remained 'substantial work' is itself a subjective statement.").

*Id.* (record citations removed).  It concluded, "Because Plaintiffs fail to adequately plead their claims of negligent misrepresentation and fraudulent misrepresentation, including with the specificity required by Rule 9(b), the Court dismisses claims 3 and 4."[7]  *Id.*

---

[7] Notably, this holding is the precise opposite of the holding Plaintiffs represent *Bogart* reached. (MDJ at 11 ("In *Bogard v. TikTok Inc.*, the court held that plausibly alleging that a platform represented it does review and remove reported content, and then failed to do so, states an actionable misrepresentation claim because such statements are susceptible of being true or false and are not merely abstract promises of future conduct. 2025 WL 604972, at *15–16 (N.D. Cal. Feb. 24, 2025).").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                   Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

___

This case presents the same two categories and leads the court to reach the same conclusions. The "what is not allowed"-type statements in this case are "YOLO has no tolerance for objectionable content or abusive users," "YOLO is for positive feedback only. No bullying," and "[b]e kind, respectful, show compassion with other users." (TAC ¶¶ 55-57.) These "statements of policy" that "simply describe what content is allowed on" YOLO cannot "be considered 'false' for purposes of Plaintiffs' claims." *Bogard*, 2025 WL 604972, at *11.

The "we remove" statements in this case are "[y]ou'll be banned for any inappropriate usage," "[i]f you send harassing messages to our users, your identity will be revealed," and "otherwise you will be banned." (TAC ¶¶ 55-57.) Plaintiffs' argument that these statements are actionable because they say exactly what Yolo will do is only half the picture—Yolo said they would do those things *when* something else happened. Here, like *Bogard*, the vagueness of the critical threshold criteria renders the alleged misrepresentations too vague to be enforced. The *Bogard* court commented that "[i]t is difficult to imagine standards more subjective than 'meaningful' and 'accurate enough.'" *Id.* In the court's view, "inappropriate usage," "harassing messages," "bullying," and being not "kind, respectful, [or] show[ing] compassion with other users," are equally subjective.[8]

The court therefore reaches the same result as the *Bogard* court did: Plaintiffs fail to adequately allege a misrepresentation of fact for purposes of *Eitel* factors 2 and 3. (The *Bogard* court also added, "In any event, as to all seven statements in question, Plaintiffs do not plead with the necessary specificity the elements of justifiable reliance on a particular statement or statements and the resulting damages." *Id.* at *12. The same is true here, as the court describes in Section III.B.2.&3.a.iii.)

### ii.    Knowledge of Falsity

___

[8] *Cf. Bogard*, 2025 WL 604972, at *9 ("The allegations in the complaint, summarized above, reflect that Defendants merely offer an opportunity for users to report videos that users believe violate Defendants' policies or guidelines to Defendants for review. Plaintiffs plead no facts suggesting that Defendants have undertaken an obligation to remove immediately any video Plaintiffs or other users report.").

___

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                          Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

Because Plaintiffs fail to adequately allege Yolo's statements are specific enough to be considered false given how subjective what constitutes "inappropriate usage," "harassing messages," "bullying," and being not "kind, respectful, [or] show[ing] compassion with other users" is, it would follow that Plaintiffs fail to adequately allege that Yolo could have known the statements were false at the time it made them.  Nevertheless, Plaintiffs allege that "Yolo knew it lacked the capacity or intent to carry out those representations, given scale, staffing, and internal practices," including because "there was one employee throughout the existence of" Yolo.  (MDJ at 8 (citing TAC allegations and a discovery response).)  In an abundance of caution, the court treats this element as adequately alleged for purposes of *Eitel* factors 2 and 3.

### iii.    Intent to Induce Reliance

The court observes that in each of the alleged misrepresentations, it is clear that Yolo is speaking directly to bullies, telling them that if they engage in certain disapproved behavior, "*your* identity will be revealed" or "*you* will be banned."  (TAC ¶¶ 55-57.)  There is no indication that Yolo is speaking to, or making any representation to, anyone else, including the victims of any bullying, harassment, or unkind, disrespectful, or noncompassionate messages. (*See id.*)  The court finds insufficient factual allegations supporting the notion that Yolo meant for their threats to bullies—made speaking directly to bullies in the "you" voice—to be taken by victims as enforceable promises that they, people to whom Yolo was not speaking, could rely on.  The court therefore concludes that Plaintiffs fail to adequately allege this element for purposes of *Eitel* factors 2 and 3.

### iv.    Justifiable Reliance

Finally, the court finds insufficiently plausible Plaintiffs' allegation that Plaintiffs' reliance on Yolo's statements—by using the app believing Yolo would protect them on it—was justifiable.  *See Bogard*, 2025 WL 604972, at *12 ("In any event, as to all seven statements in question, Plaintiffs do not plead with the necessary specificity the elements of justifiable reliance on a particular statement or statements and the resulting damages"); *see, e.g.*, *Sec. Officers Serv., Inc. v. State Comp. Ins. Fund*, 17 Cal. App. 4th 887, 899 (1993) ("These

---

**CIVIL MINUTES – GENERAL**                                              **29**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

allegations do not state a claim for negligent misrepresentation, because the representations in question were not made to plaintiff or relied upon by it.").[9]

Plaintiffs argue that Yolo's default renders liability established. But on default, "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (internal quotation omitted). Yolo is therefore not held to admit, for example, as to element 3, Plaintiffs' legal conclusion that "Yolo made these false representations with an intent to deceive Carson Bride, Kristin Bride, A.K., A.C., A.O., and members of the National Class into joining, downloading, and using YOLO," (TAC ¶ 185,) or, as to element 4, Plaintiffs' legal conclusion that "Carson Bride, Kristin Bride, A.K., A.C., and A.O., and members of the National Class reasonably relied on Yolo's false representations in deciding to join and use YOLO," (*id.* ¶ 187). *DIRECTV, Inc.*, 503 F.3d at 854 ("DirecTV's allegations that parrot the language of [the element of a claim] are not well-pleaded facts; they are simply DirecTV's legal conclusions, which appellees are not

---

[9] *See also Chisley v. Orkin Exterminating Co.*, 2011 WL 2893055, at *6 (Cal. Ct. App. July 20, 2011) (unpublished) ("Even if the negligent misrepresentation cause of action were timely, it would still be subject to a demurrer. As the Chisleys concede, the alleged misrepresentations were not made to the Chisleys, but rather to the tribe. Thus, the Chisleys could not have relied, much less reasonably relied, on the alleged misrepresentation made by Metoyer when they stayed at the resort . . . As such, their claim for negligent misrepresentation fails as a matter of law."); *Steinke v. Bank of Am., N.A.*, 2013 WL 3776438, at *4 (Cal. Ct. App. July 17, 2013) (unpublished) ("The only facts alleged were that, at the sale, the Bank misrepresented that the property was an unimproved lot. This misrepresentation was not made to plaintiffs, but only to persons attending the foreclosure sale. We agree with the trial court and the Bank that the allegation was insufficient to support a fraud claim . . . In the present case, any such misrepresentation was made to the persons attending the foreclosure sale, and plaintiffs have not stated facts sufficient to show they justifiably relied on any such misrepresentation. . . There was simply no showing of justifiable reliance based on plaintiffs' theory of the case."); *Furdiga v. Ramada Inn*, 2019 Cal. Super. LEXIS 48545, *1-2 (Cal. Sup. Ct. Aug. 12, 2019) ("2nd cause of action, fraud. The complaint fails to allege this claim with the required specificity. The bulk of the alleged misrepresentations were not made to plaintiff herself; nor does she allege her own justifiable reliance.") (citations omitted).

---

**CIVIL MINUTES – GENERAL**                                    **30**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                                          Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

held to have admitted through default.").

Plaintiffs also point to certain evidence to support the sufficiency of their claims, including "[c]ontemporaneous consumer reviews posted on the Apple App Store and Google Play Store [which] repeatedly complained that (i) bullying and harassment were rampant, (ii) reports were ignored, and (iii) the promised 'reveal/ban' safety assurances were illusory," and "contemporaneous media reportings that cite to similar user reviews and experiences." (*Id.*) Plaintiffs further cite a declaration from "third party YOLO user Maddie Freeman[]" who "explains that she understood YOLO's onboarding assurances to mean that abusive users would be identified and banned if reported, and that these representations read as binding company policy rather than aspirational language." (*See* MDJ at 13-14.) But the court is not persuaded that some evidence that some or even many people relied on Yolo's statements renders plausible Plaintiffs' allegations that Yolo intended to deceive bullying victims and/or that bullying victims' reliance was justifiable. *See Robinson Helicopter*, 34 Cal. 4th at 990.

Plaintiffs' argument that the Ninth Circuit resolved this issue fares no better. According to Plaintiffs, "The Ninth Circuit has already treated materially identi[]cal statements as enforceable promises or representations that can support misrepresentation-based liability notwithstanding Section 230. *Estate of Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1180-82 (9th Cir. 2024) (holding misrepresentation claims survive because plaintiffs seek to hold YOLO accountable for its promise to unmask or ban abusive users, not for a failure to take certain moderation actions)." (MDJ at 10-11.) Contrary to Plaintiffs' characterization, the Ninth Circuit's focus was on whether "§ 230 categorically prohibits Plaintiffs from making the argument" that Yolo can be held liable for misrepresentation. *Est. of Bride by & through Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1178-79 (9th Cir. 2024), *cert. denied sub nom. Est. of Bride v. Yolo Techs., Inc.*, 145 S. Ct. 1435 (2025). The Ninth Circuit did not find the misrepresentation claims were necessarily adequately alleged outside of the context of whether the claims were barred by Section 230. *See id.* Indeed, the Ninth Circuit recognized that Yolo "may argue that it did not intend to induce reliance on the promise by the Plaintiffs, or that the statements were not promises made to Plaintiffs but instead warnings to others." *Id.* at 1179.

There is at least one more deficiency in Plaintiffs' negligent misrepresentation claim. As stated, the first element of negligent misrepresentation is "a misrepresentation of *a past or*

**CIVIL MINUTES – GENERAL**                                                                    **31**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                     Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

*existing material fact*." *Ragland*, 209 Cal. App. 4th at 196 (emphasis added). "[F]uture statements are generally not actionable as negligent misrepresentations." *Bogard*, 2025 WL 604972, at *10 (citing *Aton Ctr., Inc. v. United Healthcare Ins. Co.*, 93 Cal. App. 5th 1214, 1246 (2023) (affirming trial court's finding that the plaintiff "could not establish a misrepresentation of a past or existing material fact (since misrepresentations about future payment rates concerned future conduct)"). Yolo's statements that bullies "will be banned" or their identities "will be revealed" (TAC ¶¶ 55-57) are future statements "not actionable as negligent misrepresentations." *Bogard*, 2025 WL 604972, at *10.

### b.      State Consumer Protection Statutes

Plaintiffs also allege claims under (1) the Oregon Unlawful Trade Practices Act, (2) Colorado Consumer Protection Act, (3) Pennsylvania Unfair Trade Practices Law, and (4) Minnesota False Statement in Advertising Act. (TAC ¶¶ 208-238.) In the Prior Order, the court observed that "Plaintiffs do not explain why [the state consumer protection statute] claims are adequately pleaded—something Defendant challenged, though in a way that was too cursory for the court to address at the motion to dismiss stage, (MTD Order at 19)—and the fact that these claims open up recovery of attorney fees makes this issue even further worth addressing, especially in light of the court's concerns regarding whether Plaintiffs have plausibly alleged the challenged statements were promises rather than threats." (Prior Order at 26.)

Plaintiffs make no effort in the Renewed MDJ to persuade the court that these claims are adequately pleaded. (*See generally* MDJ.) That is likely because many of the elements of the misrepresentation claims overlap with the claims under the state consumer protection statutes. (*See* TAC ¶¶ 208-38 (alleging Yolo made false statements, that Yolo intended for people to rely on those statements, that Plaintiffs reasonably relied on those statements).) Accordingly, the court finds those claims are insufficiently pleaded as well for purposes of *Eitel* factors 2 and 3. *Cf. Bogard*, 2025 WL 604972, at *13-15 (finding the plaintiffs failed to state claims under consumer protection statutes of Indiana, Wisconsin, and Oregon).

### c.      Summary and Conclusion on *Eitel* Factors 2 and 3

---

**CIVIL MINUTES – GENERAL**                                                   **32**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                    Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

For reasons including those just described, the court finds Plaintiffs' factual allegations do not adequately allege plausible claims for misrepresentation or violation of the relevant state consumer protection statutes such that the court finds the second and third *Eitel* factors do not weigh in favor of entering default judgment.

### 4. Sum of Money at Stake

The fourth *Eitel* factor considers "the amount of money at stake in relation to the seriousness of Defendant[s'] conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. This factor compares the "recovery sought and the nature of defendant's conduct to determine whether the remedy is appropriate." *United States v. Bronster Kitchen, Inc.*, 2015 WL 4545360, at *6 (C.D. Cal. May 27, 2015). "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014). "However, when 'the sum of money at stake is tailored to the specific misconduct of the defendant, default judgment may be appropriate'" even for significant sums. *Yelp Inc. v. Catron*, 70 F. Supp. 3d 1082, 1100 (N.D. Cal. 2014).

In the Prior Order, the court analyzed this factor as follows:

> Though Plaintiffs do not provide a total estimate of the damages they
> seek, Ms. Bride alone is "seeking 100 million dollars." (Bride Decl.
> ¶ 3.i.) Plaintiffs' statement, with no further argument or citation to
> caselaw, that "the relief sought is directly proportional to the serious
> and widespread harm alleged in the Third Amended Complaint,"
> (Mot. at 14-15), does little to persuade the court that it should exercise
> its discretion to enter default judgment. *See Aldabe*, 616 F.2d at 1092.

(Prior Order at 22.) Nothing has changed. Here is the entirety of Plaintiffs' analysis on this factor in the MDJ:

> Plaintiffs do not request a lump-sum judgment at this stage. Instead,
> Plaintiffs request an evidentiary damages hearing to determine
> appropriate compensation based on admissible proof.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                      Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

(MDJ at 16.)  Plaintiffs miss the point.  The analysis on this factor is not such that requesting a future hearing to determine the amount of damages immunizes a plaintiff from further inquiry. The point is that one of the factors a court must consider in determining whether to award default judgment—an already "disfavored" remedy—is how much money is at stake, and especially when a court has other reservations about default judgment, a high amount of money at stake is another factor weighing against entering default judgment.  *See Eitel*, 782 F.2d at 1472 ("Third, because Eitel was seeking almost $3 million in damages from McCool and because the parties disputed material facts in the pleadings, we cannot say that the district court abused its discretion in denying the default judgment.").

Here, Ms. Bride alone is seeking tens of millions of dollars or more, (*see* Supp. Bride Decl. ¶¶ 3-5); on top of that, A.O. is seeking $37,000, (Dkt. 248-5 ¶ 3.e.), Ms. Kennedy is seeking $81,900, (Dkt. 248-6 ¶ 3.j.), and Ms. Casperson is seeking $105,980, (Dkt. 248-7 ¶ 3.g.).  Although the court is aware of cases in which courts have awarded more than a million dollars on default judgment, the court finds those cases—frequently related to a contract— distinguishable from the case here.  *See, e.g.*, *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (affirming nearly $1.5 million damages award when the district court "carefully examined the damages issues, stating that NewGen only seeks contractual damages directly proportional to Safe Cig's breach of the contracts and thus the amount of money at stake does not bar an entry of default judgment") (internal quotations and modifications omitted); *Silver Screen Films Inc. v. Hollywood Media Venture, LLC*, 2024 WL 1136526, at *3 (C.D. Cal. Feb. 9, 2024)  ("Taking Plaintiff's allegations as true, Defendants fraudulently induced Plaintiff to loan them millions of dollars that they never intended to pay back. Although the damages are substantial, the bulk of the relief requested is the money Plaintiff loaned to Defendants. . . . Because the conduct alleged is egregious and the amount sought is tailored to this conduct, this factor is neutral despite the nearly $8,000,000 sought.").  In sum, based on the record and the totality of the circumstances presented here, the court finds this factor weighs against granting default judgment.

**5.      Possibility of a Dispute Concerning Material Facts**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                              Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

"The fifth *Eitel* factor considers the possibility of dispute as to any material facts in the case." *PepsiCo*, 238 F. Supp. 2d at 1177. "The general rule is that a defaulting party admits the facts alleged in the complaint as true." *Constr. Laborers Tr. Funds for S. Cal. v. Anzalone Masonry Inc.*, 316 F. Supp. 3d 1192, 1202 (C.D. Cal. 2018). Thus, "[w]here a plaintiff has filed a well-pleaded complaint, the possibility of a dispute concerning material facts is remote." *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012) (citing *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 921-22 (C.D. Cal. 2010)).

In the Prior Order, the court analyzed this factor as follows:

> But here, for reasons including those discussed with respect to the second and third *Eitel* factors, the court has difficulty concluding there is not a possibility of a dispute concerning material facts—in fact, the court has reason to believe there would be such disputes. Once again, Plaintiffs' failure to engage meaningfully with this factor—addressing it in only five lines without a single citation to any authority, (Mot. at 15)—shifts the burden entirely to the court to determine its impact on the default judgment analysis.

(Prior Order at 22-23.)

In the Renewed MDJ, this is the sum total of Plaintiffs' analysis:

> Default eliminates factual disputes as to liability as disputed facts are to be construed in Plaintiffs' favor.

(MDJ at 16.) But as stated, on default "a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *DIRECTV, Inc.*, 503 F.3d at 854 (internal quotation omitted); *see also Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988) ("[F]acts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support [default] judgment."). Plaintiffs' repeated "failure to engage meaningfully with this factor" (Prior Order at 23) only underscores the

**CIVIL MINUTES – GENERAL**                                                   **35**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                              Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

court's concerns that there would be disputes concerning material facts in this case.  The court finds this factor weighs against entering default judgment.

### 6.    Whether Default Was Due to Excusable Neglect

"The sixth *Eitel* factor considers the possibility that the default resulted from excusable neglect." *PepsiCo*, 238 F. Supp. 2d at 1177.  Here, there can be little question that Yolo's failure to defend this case is not due to excusable neglect, as Yolo plainly knew the deadline to substitute counsel (having successfully sought an extension of that deadline) yet failed to meet it. *See Beyond Fin., LLC v. Fid. Debt Relief, LLC*, 2022 WL 22841121, at *5 (C.D. Cal. Oct. 11, 2022) (finding fifth and sixth *Eitel* factors weighed in favor of granting default judgment where "it [was] virtually certain that Defendants' failure to litigate is deliberate rather than due to excusable neglect because [a defendant] communicated extensively with Plaintiffs' counsel and was repeatedly advised to retain a lawyer and appear in the case, yet failed to do so"); *Adobe Sys. Inc. v. Kern*, 2009 WL 5218005, at *6 (N.D. Cal. Nov. 24, 2009) ("Defendant's voluntary decision to allow default to be entered contradicts any argument for excusable neglect."); *Landstar Ranger*, 725 F. Supp. 2d at 922 (finding "the possibility of excusable neglect [was] remote" when the defendant was properly served).  The court concludes that the sixth *Eitel* factor weighs in favor of entering default judgment.

### 7.    Policy Favoring Decision on the Merits

"The final *Eitel* factor examines whether the strong policy favoring deciding cases on the merits prevents a court from entering default judgment." *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010) (citation omitted).  While "[c]ases should be decided upon their merits whenever reasonably possible," *Eitel*, 782 F.2d at 1472 (citation omitted), "this preference, standing alone, is not dispositive," *PepsiCo*, 238 F. Supp. 2d at 1177 (quoting *Kloepping v. Fireman's Fund*, 1996 WL 75314, at *3 (N.D. Cal. 1996)).  Accordingly, "when a defendant fails to appear and respond, default judgment is appropriate." *Allstate Life Ins. Co. v. Markowitz*, 590 F. Supp. 3d 1210, 1217 (C.D. Cal. 2022) (citation omitted); *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1083 (C.D. Cal. 2012) (similar).  Yolo's choice not to defend itself in this case renders a decision on the merits "impractical, if not impossible." *PepsiCo Inc.*, 238 F. Supp. 2d at 1177.  Although this means "the preference

**CIVIL MINUTES – GENERAL**                                         **36**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

Case No. 2:21-cv-06680-FWS-MBK                     Date: May 11, 2026
Title: Kristin Bride *et al.* v. Snap Inc. *et al.*

to decide cases on the merits does not preclude a court from granting default judgment," *id.* (internal quotation omitted), this factor only highlights the other concerns the court has detailed throughout this Order.  The court finds this factor is neutral.

### 8.      Default Judgment Summary

Courts' "starting point is the general rule that default judgments are ordinarily disfavored," and "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472.  Unfortunately, deciding this case on the merits with Yolo's participation is not possible.  However, the court has "serious reservations about the merits of [Plaintiffs'] substantive claim[s], based upon the pleadings." *Id.*  Moreover, Plaintiffs are seeking tens of millions of dollars or more "in damages from [Yolo]" and the record in this case reflected numerous "disputed material facts in the pleadings." *Id.*  The court has now twice carefully considered all the *Eitel* factors, and on balance, and in the court's discretion, *Aldabe*, 616 F.2d at 1092, the court finds Plaintiffs have made an inadequate showing that the *Eitel* factors weigh in favor of granting default judgment.

## IV.   Disposition

For the reasons set forth above, the Renewed MCC and Renewed MDJ are **DENIED.** The court does not find it appropriate to permit Plaintiffs to renew these motions a third time. Accordingly, the court **DISMISSES** Plaintiffs' claims against Yolo.  Having now disposed of all claims and parties in this case, the court will enter final judgment and close the case.